# Exhibit 1b
Original Petition, pp. 51-128

barbarians—all under the watchful eye and protection of DEBERRY, ACEVEDO, SBOT-OCDC, AG, THIRD COURT, and the SUPREME COURT. No civilized society harbors, promotes, and protects bigotry and misogyny to this extreme. All of these defendants were affiliated with the Republican Party and its far-right hatred towards women—especially those who do not stay in their place; to-wit: home, pregnant, and bare-foot ignorant in order to be easily controlled and manipulated into a subservient status.

20.     As a direct and proximate result of the formation of the Star Chamber and the fruition of the designs of its members, BARNES was wrongfully convicted of a crime she did not commit and the jury was manipulated into seeing things that never occurred. The predatory prosecutors were allowed to suborn perjury, tamper with the evidence, tamper with the witnesses, tamper with governmental records, and misrepresent the law and facts because they were completely unchallenged by the intentional ineffective assistance of counsel within this Star Chamber. Star Chambers are frauds on the court *per se*. Star Chambers have been declared unconstitutional ever since the passage of the *Habeas Corpus* Act of 1640 by the Long Parliament. Thus, Star Chambers were never an accepted part of American Justice, and certainly never an intended part of the Texas criminal justice system. Star Chambers have re-emerged as a way to circumvent the Supreme Court ruling in *Gideon v. Wainwright*. The prosecutorial and judicial reaction to this significant case was to create the current court-appointed counsel system to give the appearance of compliance with the 6th amendment guarantee. However, it has proven repeatedly to be a mere legal subterfuge leading to record numbers of wrongful convictions, coerced plea bargains, and waivers of rights on appeal. The courts of Texas,

then used the interpretation of the 6th amendment to repeal a very significant and vital part of the Texas Bill of Rights that has been a part of the legal heritage of Texas ever since 1836—currently Art. I, Section 10 of the Bill of Rights. The 6th amendment did not guarantee the right to represent oneself; however, this right was so important in our legal system that the United States Supreme Court read the right into the 6th amendment in *Faretta v. California*, a 1975 case arising out of California's attempt to do away with the right to represent oneself and give the total monopoly to the attorneys. Once again, the Texas courts have subverted justice to overlay the language in federal cases applying the 6th amendment, which has no clear guarantee of the right to represent oneself, into Texas cases in order to repeal the clear provision contained in the Texas Bill of Rights. Unlike the 6th amendment and unlike the California constitution, Art. I, Section 10 clearly states that the citizens of this republican form of government in Texas have a strong three-cord right to representation and protection of their other rights—"the right to be heard, in person, through counsel, or both." Without this three-cord protection, all other rights fall by the wayside and are held for naught. The Texas courts, acting through bar members to set up the monopoly for attorneys in the courts, have conspired, aided, abetted, and assisted in the twisting of the clear language contained in the Texas Bill of Rights to force an unconstitutional election on the citizens of Texas by interpreting the language to read that the accused has a right to be heard himself OR through counsel, but not both. If the framers wanted to say "but not both," they would have said so; but they said "or both" and "or both" means "or both." And it is an unconstitutional fraud on the court to twist and separate being heard and representation. One cannot be effectively heard without true honest representation and one cannot have effective representation when they are not

heard. Being heard and being represented are essentially the same because they are so closely intertwined that to separate them would destroy them. This is the fraud on the court that has led to record numbers of coerced plea bargains, wrongful convictions, executions, and forfeitures and waivers on appeal. The intended three-cord protection is the only sure way to protect the citizens' right to have control over their defense and to present their defense. It does not lead to a "hybrid" representation, but to an organic, wholesome, effective manner of being heard through dual representation. It is unconstitutional to limit representation to one court-appointed attorney. The accused can have as many lawyers as he wants and he himself is his own lawyer. Rich people can have unlimited numbers of defense lawyers, just like Rick Perry; but the poor have to suffer one uncaring, disloyal court appointed attorney. This is disparate treatment of members of a suspect class; and is, perforce, unconstitutional. The correct interpretation of this valuable Texas right would have prevented the Star Chamber in this case and in all cases. The misguided interpretation allows the very situation that now plagues the Texas criminal justice system and is leading to the rampant abuses, coerced plea bargains, wrongful convictions and destruction of lives, because it allows the courts to set up Star Chambers by forcing a court-appointed attorney on the accused who is paid by and cooperates with the other bar members, and it grants a monopoly to the attorneys to the exclusion of the citizen-accused. A court-appointed attorney has the power and ability to waive all rights inherent in the accused by deception, trickery, dishonesty, coercion, threats, violations of trust and confidentiality, breach of fiduciary duty, and defamation. Court-appointed attorneys, as in BARNES' case, absolutely refuse to prepare for trial, interview witnesses, conduct discovery, or take any meaningful action to file pretrial

motions, make objections, or preserve a record for appeal so that the accused is not only deprived of a fair trial, he is then denied an appeal because all error was "waived" by this court-appointed counsel.  As in BARNES' case, the appellate record is devoid of objections that BARNES was prevented from making, witnesses that BARNES was prevented from calling, evidence that BARNES was obstructed from obtaining and introducing, and devoid of any opening statement at all because the Star Chamber did not want BARNES to realize too soon that the court-appointed counsel was not going to put on BARNES' defense or call her witnesses or confront the liars proffered by the prosecutors, and devoid of the arguments that BARNES would have made and the charge that BARNES would have submitted along with the legal briefing that BARNES would have filed.

21.     The predatory prosecutors, aided and abetted by SHAVER and the law enforcement deputies, suborned perjury and paid GITTEL at least $5,000.00 to lie and falsely accuse and identify BARNES; and they failed and refused to disclose this fact even though it is clearly relevant and requested by BARNES discovery sent in 2010 before she was summarily disbarred without any jurisdiction.  Further, CARNES and DUDLEY discussed his increase in pay in the back hallway during trial and CARNES secured payment of $18,000.00 for him in order to keep him within the confines of the Star Chamber and dissuade him from putting on BARNES' defense.  DUDLEY certainly could not have submitted a true and honest bill for that amount since he refused to talk with witnesses, secure evidence, or prepare for trial.  These bar members conspired, aided, abetted, and assisted in stealing, swindling, misappropriating, and/or embezzling well over $1,000,000.00 from the money of the citizens entrusted to the State in order to

maliciously prosecute, abuse, silence, suppress, oppress, and punish BARNES. DUDLEY, failed and refused to ask GITTEL how much she was paid because it would have adversely impacted her credibility with the jury and because he was being paid as well to do his part in the wrongful conviction. The predatory prosecutors, aided and abetted by SHAVER and the law enforcement deputies, after first locking BARNES away, took GITTEL out to BARNES' property and coached her to change her testimony more and more to implicate BARNES such that her testimony at trial was far different from her initial claims. Perjury was suborned from the inception by the deputies and prosecutors and every time it became clear that GITTEL was lying and fabricating the entire story, the prosecutors and deputies manipulated, educated, and coached her more. DUDLEY, failed and refused to ask GITTEL about this fact and the changes in her claims because it would have adversely impacted her credibility with the jury. GITTEL had knee or hip surgery and eye surgery, and the predatory prosecutors failed and refused to disclose this fact or the dates and complications of same even though it is clearly relevant and requested by BARNES. DUDLEY, failed and refused to ask her about these surgeries and the dates and complications because it would have adversely impacted her credibility with the jury. The predatory prosecutors destroyed and failed to secure and preserve, and failed and refused to produce, the exculpatory evidence that would have proven that GITTEL was never sent to BARNES' property even though that was clearly exculpatory and BARNES had repeatedly requested it. At trial, POPPA admitted to having this critical exculpatory evidence, but claimed that no one had ever asked him for it despite a court order in December 2010 ordering the prosecutors to produce it. DUDLEY failed and refused to ask GITTEL about this evidence or secure it from other

sources because it would have adversely impacted her credibility with the jury. This also allowed the fraud on the court because RENO willfully misrepresented the facts and law to the jury, pretending that GITTEL was lawfully on the property as a result of her duties for the federal government. The exculpatory evidence would have proven this was a lie. DUDLEY failed and refused to ask the questions of GITTEL that BARNES had typed up and provided to him because it would have proven she was lying and would have revealed who had coached her to lie initially and under oath. DUDLEY failed and refused to subpoena or request the exculpatory records and documents as BARNES requested because these would have proven not only that GITTEL was lying, but that the deputies and prosecutors were directly responsible for her lies, deceptions, and aggravated perjury.

22.    DUDLEY, failed and refused to put on BARNES' defense, failed and refused to allow BARNES her choice of strikes in selecting the jury, failed and refused to make an opening statement in order to hide the treachery from BARNES until it was too late, failed and refused to call BARNES' witnesses if they were objected to by the prosecutors, and failed and refused to put on BARNES' evidence and introduce exhibits if the prosecutors objected to them in *ex parte* communications. DUDLEY, like SCHREIBER before him, waived BARNES' rights in backroom, behind-closed-doors, sessions that seriously compromised BARNES' rights and defense, without every informing her, disclosing it to her, or discussing it with her. DUDLEY failed and refused to cross-examine and confront the dishonest witnesses called by the prosecutors, or to obtain the exculpatory evidence, or to locate and talk to exculpatory witnesses, or to impeach witnesses called by the prosecutors, and to communicate with BARNES in any

reasonable, timely, or meaningful manner. There was a complete failure of legal representation in this case as in the vast majority of cases where court-appointed counsel is forced on unwilling citizens in order to obtain expedient and wrongful convictions. The current system of court-appointed counsel is designed to create a legal artifice or subterfuge to make it appear as though citizens are getting legal advice and being competently represented, but it is nothing more than a sham, a mockery, and a fraud on the courts because it does the exact opposite in reality and the courts are well aware of this devastating consequence. These court-appointed counsel are lazy, incompetent, and only plea bargain—they deceive or coerce people into pleading guilty to crimes they did not commit and they do this on a routine basis; and if the client refuses, as BARNES did, they retaliate—and the courts know this fact and aid, abet, and assist these acts of abuse, deception, and coercion. People are wrongfully convicted because they have incompetent or unethical court-appointed counsel who waive their rights rather than protect their interests. BARNES had motions *in limine* in place that would have prevented the overwhelming harm from the gross malpractice of the court-appointed counsel; however, she was silenced and not allowed to make her objections. How fair is it that her right to complain on appeal was waived by her alleged "counsel" when she had done all she could to make her complaints and protect the record? BARNES had timely objected and moved to strike the plant on the jury venire panel, but her "counsel" refused. DUDLEY not only refused to shuffle the jury, he refused to strike the plant. BARNES had filed the motions *in limine* that would have prevented the error in the trial; but DUDLEY refused to make the objections or even read or understand the motions *in limine*. BARNES had briefed the law, prepared the charge, and provided it all to

DUDLEY but he failed to present it or use it. After selling out his client, SHAVER allowed DUDLEY to withdraw immediately after trial without any notice whatsoever to BARNES in order to further obstruct justice and deprive her of making a record for appeal. Later an equally unethical and ineffective counsel was appointed who refused to even discuss the case or points on appeal with BARNES. It is interesting how a bar member is allowed to represent a citizen of this State on appeal when he has not discussed the case with the alleged "client" and when he was not present at trial. How can a white male bar member and competitor of BARNES represent BARNES on appeal when he does not even know the points she wishes to raise and when he failed and refused to timely file affidavits and evidence in support of a motion for new trial in order to make the appellate record that DUDLEY failed to make to preserve error? This is nothing but a legal subterfuge and unconstitutional artifice to make it appear that the accused has had representation, their day in court, and their right to appeal when it is the exact opposite—it is clear obstruction of justice by bar members resulting in a fraud on the courts. For all these reasons and more, BARNES now sues SCHREIBER, DUDLEY, and HOOKS for legal malpractice.

23.    Both SHREIBER and DUDLEY, absolutely failed and refused to obtain the records from the Sheriff's Department of Williamson County proving that white male landowners are routinely permitted to engage in the exact same conduct that BARNES was accused of and not one time has a sheriff's deputy ever arrested the white male landowner and in every incident the deputy has arrested the perpetrator of the crime—the criminal trespasser. There was no evidence in this case—it was all built on speculation, conjecture, surmise, sensationalism created by hearsay and defamation, fear, and hatred.

None of these imaginings or histrionics is admissible evidence and they should have been timely objected to and excluded. However, due to the ineffective assistance of counsel, the wrongful disbarment, and the wrongful refusal to allow BARNES to speak or represent herself or appear through counsel of choice, no objection was made and the deliberately dishonest distortions, perjury, and pseudo-evidence were allowed to inflame, prejudice, and unduly influence the jury—not of BARNES' peers, but one of the white male bar members. DUDLEY, failed and refused to introduce the contents of the Census Bureau Enumerator Manual for these follow-up duties, or impeach GITTEL with these regulations, which clearly and unequivocally stated that the enumerator was not permitted to go beyond locked gates or security gates without the consent of the landowner. The enumerators are not free to ignore No Trespassing signs or circumvent locked security gates to enter property or to conduct their business—as willfully misstated by RENO. If GITTEL had been on BARNES' property, she would have been there as a criminal trespasser. The predatory prosecutor was allowed to misrepresent the law and facts in this regard without objection; then SHAVER refused to instruct the jury on the law and so aided and abetted the material misrepresentation of fact and law made by RENO. DUDLEY, failed and refused to put on the expert testimony concerning the notorious unreliability to eyewitness identification even though BARNES provided him with a book authored by the leading authority, a dearth of scientific studies, and had secured an expert to testify on these matters. DUDLEY merely stated during trial that "we are not contesting that it was you." When BARNES asked who "we" was, she got no response because the "we" were the white male bar members of the Star Chamber who decided everything back in CARNES' office outside BARNES' presence. This is how justice is

cooked and served up in Star Chambers. SCHREIBER and DUDLEY allowed the predatory and dishonest prosecutors to grossly misrepresent the law and the facts of this case and this gross fraud on the court went unchallenged and resulted in a gross miscarriage of justice and wrongful conviction. DUDLEY failed and refused to ask GITTEL, the star witness in this Star Chamber, about the manner in which she was manipulated and her perjury suborned—she was coached into believing that BARNES was the woman who came out of the pasture; the best practices of eyewitness identification were deliberately violated; she was manipulated into dramatically changing her description of the woman who came out of the pasture; she was taken out to BARNES' property and her description of the house and property changed dramatically; the address of the property was changed to BARNES' address; the police report was tampered with so that it showed that the deputies were dispatched to 419 Indian Trail in Leander where shots were fired rather than the truth—they were dispatched to the Spoon's Restaurant at H.E.B. Plus in Leander and the shots were initially reported as fired at 33 Indian Trail in Liberty Hill; they arrived at BARNES' property solely out of malice and not probable cause; they decided without any investigation whatsoever to frame BARNES—the orders were to "get the 'vic' to identify BARNES, work up a warrant, and have her in jail Monday morning" so that is exactly what they did. These predators knew that the media defendants, AG, SBOT-OCDC, and the courts would aid, abet, and assist this fraud on the court. DUDLEY absolutely refused to ask GITTEL, the star witness, how much she was paid by these prosecutors for her testimony. It was extremely relevant to the defense for the jury to know that she was paid over $5,000.00. This was a clear abuse of the Victim's Services reimbursement fund because there were

no medical bills or other injuries to compensate. This was clearly part of the manipulation and fabrication process to ensure that the star witness did not grow a conscience, recant, and not only tell the truth, but expose the manipulation and programming process utilized routinely to gain wrongful convictions through manipulated and inflamed eyewitness identifications and the pruning and coaching to instill, shape, and develop the false and fabricated memory over time. These fraudulent practices have been well-known and documented since the Justice Department publication to law enforcement in 1999.

24.    Initially GITTEL claimed that the house was dilapidated with everything pulled out and in the process of being re-modeled whereas BARNES home was six-years old, having been built new in 2003-2004. At trial, after taking the star witness out to BARNES property in 2011 (while the Star Chamber had BARNES unconstitutionally and illegally locked away in the maximum security unit for the criminally insane without any right to appeal), after payment of over $5,000.00, and after delay of the case by three years, the star witness, GITTEL, suddenly describes the house as "a freshly-painted house. Very pretty. I think it was Dresden blue and white, which are two of my – my favorite combinations. So it was very, very pretty. And it had obviously just been painted. And I thought, yup, probably a real estate person has this house and they're getting it together." (Vol. 14, pg. 30). BARNES did not realize until trial that GITTEL was such a willful and deliberate liar because SHAVER failed and refused to allow the defense to take GITTEL's deposition and the predatory prosecutors, knowing she was lying, refused to allow the defense access to GITTEL. BARNES did not learn until after trial, despite repeated attempts to secure the information pretrial, that GITTEL was a

61

failed actress or "performer" and failed "writer" who had been sucking advances for a novel for six years, with significant mental and physical health issues, and in dire need of funds—BARNES only knew pretrial that she was living in a small mobile home in Liberty Hill—coincidentally, the same small town where HIGHTOWER and her law enforcement husband reside.  HIGHTOWER was the unethical "investigator" for the prosecutors who tampered with the witnesses and made material misrepresentations to the trial court in the Arnold Garza case that BARNES had just tried in May 2010 and in which RYE and an armed "investigator" had engaged in an aggravated assault and criminal trespass on BARNES' property about five days prior to GITTEL's alleged incident.  What a coincidence!  However, BARNES was not allowed to know anything about GITTEL or her background or even what she looked like—BARNES was not only not allowed to face her accuser or know anything about her for three years while she was being held in cruel captivity, she was not even allowed to see a picture of this mentally unstable and easily manipulated liar.  There was no truth whatsoever in anything GITTEL said and her story changed at least three times, which the jury never knew.  BARNES was not ever allowed to hear her initial report before the tampering and manipulation by the deputies and prosecutors with the intent to frame BARNES.

25.     The destruction of the map and address print out and training manuals that were in GITTEL's possession on the day she decided to willfully ignore "NO TRESPASSING" signs and circumvent a security gate and enter on a private road into a secure neighborhood, hid the fact that GITTEL was sent to 33 Indian Trail in Liberty Hill and NOT to 419 Indian Trail in Leander.  The address printout also had the names of the persons she was sent to enumerate and it would have also proven that BARNES' name

was not on the list. BARNES had already sent in her form and been enumerated months before. BARNES was not even home at the time GITTEL claims she was trespassing. Yet, GITTEL was allowed to spin her yarn without being subjected to any meaningful cross-examination and allowed to constantly change her story without any challenge because the Star Chamber had already decided that the best defense was not to contest that BARNES was to be portrayed as the perpetrator! Even the exculpatory witnesses that GITTEL was sent to interview that day were hidden from BARNES and they would have yielded highly relevant information that could have impeached GITTEL. Such is the system in Texas that an accused no longer has a right to prepare cross-examination or confront the accuser because all discovery is obstructed by the prosecutors and the courts with impunity. The result was a vindictive vilification verdict obtained by a fraud on the court because the lies, fabrications, and prevarications went unchallenged for want of a zealous advocate. Malicious gossip and mean-spirited misogyny is transformed and paraded as news by the media defendants; it then seeps into the trial where it is presented as evidence and then accepted as fact by the THIRD COURT and proclaimed as truth by the SUPREME COURT. It is a vile spirit that takes on an air of superiority when repeated and accepted by bar members and those who are entrusted with the truth-finding mission until soon it has the legitimacy and respectability of authority and no one questions its origin.

26.    Having destroyed the exculpatory evidence of the map, address printout, and training manuals, it was just a matter of not allowing BARNES to testify. GITTEL's willful aggravated perjury was bolstered both before and after she lied on the stand. SWAIM, BRADELY, MCCABE, MCDONALD, SCHREIBER, DUDLEY, and certain

deputies also conspired with and aided, abetted, and assisted TUMLINSON in committing aggravated perjury when they conspired to and aided and abetted the destruction of the video recording proving that TUMLINSON attacked BARNES from behind as she exited the building in order to knock her phone out of her hand to prevent and interrupt her call to 911 to report his drunken state and abusive behavior. TUMLISON lied under oath and claimed that the video camera "malfunctioned" and there was no video! Without the video to prove the truth, he lied with impunity to cover up for his misogynous assault and abuse of a female officer of the court while performing her duties. Thus, as is the habit, practice, and custom of dishonest, unethical, predatory prosecutors who conspire with and aid, abet, and assist wayward law enforcement personnel and deputies to violate the constitutional rights and civil liberties of the citizens of Texas, all the exculpatory evidence was destroyed so that two criminal liars could testify unchallenged against the accused, while the accused is silenced and suppressed in the Star Chamber. This unconstitutional system is resulting in record numbers of wrongful convictions because the appellate courts rubber stamp these wrongful convictions and claim that the Star Chamber treatment waived the accused rights to complain on appeal while blocking the accused rights to be heard at trial or on appeal. There is a monopolistic stranglehold on the rights of the citizens in Texas due to the misinterpretation and twisting of the clear language in the Texas Bill of Rights and the deprivation of the intended triple-cord protection of basic, fundamental, structural rights. The monopoly established by the courts in favor of licensed attorneys and to the detriment of the citizen-accused is unconstitutional—the forever inviolate right to serve as your own lawyer with the assistance of counsel is God-given, organic, and a natural

64

right of the citizens of Texas. The AG does absolutely nothing to correct or address the dishonesty in "law enforcement" and wayward deputies; and the SBOT-OCDC does nothing to the predatory prosecutors because they themselves are prosecutors engaging in some of the exact same unethical and dishonest behavior. This is not justice, this is a racket run by a cartel; and members who speak out against being forced to financially support this racket are ostracized, punished, disbarred, and stripped of their constitutional rights as well as their right to earn a livelihood. These acts of violence are committed with impunity because they hit, abuse, and strike at people hiding behind stolen valor and an offensive use and abuse of a stolen shield of immunity. This is a violation of the public trust and breach of fiduciary duty. It shocks the conscience to use a shield as an offensive weapon against the very people who were the intended beneficiaries of the public trust and constitutionally-protected right.

27.    It is firmly established that a constitutional right exists not to be deprived of liberty or property on the basis of perjury or false evidence fabricated by a government officer. *See Scotto v. Almenas*, 143 F.3d 105, 113 (2d Cir.1998) (parole officer); *Ricciuti v. N.Y.C. Transit Authority*, 124 F.3d 123, 130 (2d Cir.1997) (police officers); *White*, 855 F.2d at 961 (same). "When a police officer creates false information likely to influence a jury's decision and forwards that information to prosecutors, he violates the accused's constitutional right to a fair trial . . . ." *Ricciuti*, 124 F.3d at 130; *see also Malley*, 475 U.S. at 346 n. 9, 106 S.Ct. 1092 (arrest unconstitutional if police officer obtained warrant from judicial officer on the basis of evidence that "no officer of reasonable competence" would have considered sufficient). It has also long been established that a prosecutor who knowingly uses false evidence at trial to obtain a conviction acts unconstitutionally.

*See Napue v. Illinois*, 360 U.S. 264, 269, 79 S.Ct. 1173, 3 L.Ed.2d 1217 (1959); *Pyle v. Kansas*, 317 U.S. 213, 216, 63 S.Ct. 177, 87 L.Ed. 214 (1942); *Mooney v. Holohan*, 294 U.S. 103, 112, 55 S.Ct. 340, 79 L.Ed. 791 (1935). These cases serve to inform every prosecutor that his knowing use of false evidence is unconstitutional. Any prosecutor aware of these cases would understand that fabricating evidence in his investigative role violates the standards of due process and that a resulting loss of liberty is a denial of a constitutional right. BARNES had a right not to be deprived of liberty as a result of fabrication of evidence and that right was clearly established in 2010.

28.    These individual defendants, media defendants, and state entities entrusted with the public trust and duty are aiding and abetting common law fraud, fraud on the courts, and breach of fiduciary duty by sureties and court appointed personnel, including attorneys. Conspiracy to undermine the constitutional foundation and common law underpinnings of the republican form of government in Texas, and conspiracy to usurp the power and authority retained by the people by setting up a system of Star Chambers operating under a constructed cloak of immunity in order to escape accountability and remove checks and balances in the government is unconstitutional, fraud on the court, and breach of the fiduciary duty owed to the public trust. Exempting the judicial process from scrutiny for criminal and seditious conduct, and the aiding and abetting of the predatory prosecutors and members of the black robe mafia by the SBOT-OCDC cartel, which is a protection racket, is resulting in the destruction of human life on a growing scale.

29.    The Texas Constitution and all the rights retained by the people to protect themselves from these abuses of power pre-dates the concept and construction of the

black veil of immunity. The Texas Bill of Rights is very clear that the citizens did not envision a legal system where those who violated the public trust and actively corrupted the system, deliberately obstructed justice, and willfully circumvented the constitutional guarantees, would be protected and never held to account. This full-scale attack on the structural integrity of common law courts and conspiracy to remove court participants from accountability to the people violates the Texas Constitution and clear intent stated in the preamble of the Bill of Rights and Art. I, Section 29. The weaving and expansion of immunity is nothing more than a power grab by bar members against and from the people. This usurped power is power the people did not delegate, but specifically reserved to themselves. However, an unenforceable right is no right at all. When the citizens have no fair access to the courts and no zealous and honest representation before those courts; and when the bar members within the system have all exempted themselves from accountability, then a citizen has been stripped of her legal rights and can continue to be forced into Star Chambers across the State. Without the triple-cord protection, the accused cannot be heard, he has no voice, and thus, no rights, for all rights hinge upon the right to be heard and to assistance when necessary. Granting a monopoly to control the natural rights of men to represent themselves and to speak for themselves is unconstitutional. The unconstitutional acts of these corrupt bar members, acting within the system. which was set up to protect the rights of the citizens against abuses of power, have effectively repealed the Texas Bill of Rights *in toto*. A citizen is stripped and outlawed within the forced confines of a Star Chamber with no meaningful right to be heard or to appeal or seek *habeas corpus*. In a republican form of government, a right is either available to all citizens equally, or it is not a right; it becomes only a license. What

the monopoly has said is that only one with a license to practice law can be heard in the courts. All individuals have a right to practice law and they do not need a license to do so. Further, representing others is a fiduciary relationship and one of principal and agent, but what the monopoly does is discard the fiduciary duties and put the agent in the place of the principal by transferring all rights of the principal to the agent. In the monopolized system created by the bar members who control the courts, the agent is free to waive, forfeit, compromise, or fritter away the rights of the principal with impunity and no meaningful recourse or reasonable accountability. Immunity should not ever shield criminal conduct, obstruction of justice, fraud on the court, or unconstitutionally willful acts because the republic of Texas is incapable of acting against the people, but is duty bound to act as a fiduciary agent on behalf of their principal. A license simply cannot stand tradition on its head and allow such rampant abuse of the citizens by a privileged few who are routinely violating their fiduciary duties owed. Texas as a republic cannot breach the fiduciary duty, but can only fulfill and protect it. Those individuals entrusted by the people who individually choose to usurp the people's power, breach the fiduciary duty owed, and violate the public trust; should be accountable to the people lest the open courts' doctrine and right to redress of grievances be violated. Texas is duty bound to protect its citizens from corrupt men; NOT protect the corrupt men from being accountable to the citizens. The current set up in the criminal justice system of Texas where the SBOT-OCDC, appellate courts, and AG all ignore the unconstitutional conduct and abuses of power by certain bar members acting within the criminal justice system, and actually aid, abet, and assist these predatory psychopaths and corrupt court officials is unconstitutional. The judiciary is in an agency relationship with the people and owes

68

an ultimate fiduciary duty to the citizens of Texas and an agent cannot take away the principal's ways and means of control and to seek accountability. The citizens must have a meaningful and timely right of redress and the courts must be open and fair for every injury done—especially to those who have been targeted, framed, and wrongfully accused and convicted of crimes they did not commit—especially when the accusers are the real criminals, but because they get a paycheck from the citizen's coerced tax dollars, they are morphed into the "victim" and the citizen is forever cast in the die of the "criminal" due to the active participation by the media defendants.

30.     The judiciary can strike down a legislative act as being unconstitutional. The judiciary can strike down an executive order as being unconstitutional. However, neither the legislative nor executive branch can strike down the acts of the judiciary as being unconstitutional. This is not a balance of power and operates as no check or balance whatsoever. The judicial branch has a protection racket set up with the SBOT-OCDC and Commission for Lawyer Discipline—all nominal names adopted by the SUPREME COURT to give it all the air of legitimacy in order to control speech and thought, keep things in check, and under control. The intent is to protect the power structure, the legal monopoly on the courts, influence elections of judicial officers and prosecutors who protect the racket that is protecting them. In order for any citizen to practice law, they are forced to become a member of the cartel or gang and are forced to pay over $500.00 annually to support this racket that suppresses speech, ideas, and expression of thought. If one is to practice law, one is forced to join and pay to support this gross mockery and miscarriage of justice that dampens competition and obstructs access to the courts. The members of the black robe mafia, predatory prosecutors, the enforcement arm of the

cartel, the SBOT-OCDC, and those who financially support, aid and abet this system act contrary to the intent of the citizens who framed the Bill of Rights and who continued to adopt these rights with each passage of the Constitution. These actors and their bad acts are an affront to the citizens of Texas.

31.    BARNES seeks her right to earn a livelihood and practice law unhindered by these deeply controlling and misogynous people. BARNES seeks to engage in the practice of law without being forced to be a member of such a group and being forced to pay dues and to support causes she does not endorse nor value. The SBOT did nothing to aid, assist, or finance BARNES' legal education and has done nothing but target and harass her during the nearly 30 years she has been forced to be a member and pay dues. The SBOT cannot constitutionally interfere with, hinder, or interrupt her practice of law or convert her intellectual property rights as they have done. The SBOT-OCDC, DEBERRY, ACEVEDO, SUPREME COURT, MCCABE, BRADLEY, SHAVER, THIRD COURT, and any other bar member acting in concert with them, have no lawful and constitutional authority, jurisdiction, or right to prevent and obstruct BARNES' right to practice law and share her intellectual property with anyone she chooses. BARNES is seeking a declaration of rights and permanent injunction against the SBOT-OCDC since they have proven that they are incapable of acting honestly, ethically, or with any integrity whatsoever.

32.    The mock arrangement whereby the Star Chamber was set up was a violation of the public trust and breach of fiduciary duty *per se*. BARNES was the intended beneficiary of the fiduciary relationship, trust, and surety bail bond contract that were all breached in the process of committing the fraud on the court. The court-appointed

counsel system in Texas is a conspiracy to commit fraud on the courts and creates a legal subterfuge or artifice to circumvent the constitutional guarantees in the Texas Bill of Rights and to violate fundamental and structural rights, due course of law, and equal rights under the law.

33.   SCHREIBER, DUDLEY, HOOKS, and BURN all violated and breached the contract, legal duty owed, fiduciary duty, and public trust.   BURN and SHAVER breached the surety bail bond contract,[9] aided and abetted by the co-conspirators, SCHREIBER, BRADLEY, MCCABE, and MCDONALD.  SHAVER, SCHREIBER, BRADLEY, MCCABE, MCDONALD, BURN, DUDLEY, RENO, PURYEAR, CONNELL, CARNES, and HOOKS all conspired to violate BARNES' constitutional, statutory, contractual, and common law rights; and each of these defendants aided, abetted, and assisted the others in these constitutional crimes and civil liberty violations. Pursuant to Texas Constitution, Art. I, §§ 9, 10, 11, 12, 13, 16, 19, 27, 28, and 29, BARNES seeks recovery for the breaches of pretrial bond contract and surety bail bond contract by the Travis County Pretrial Services and SWAIM et al, as well as the breaches of the surety bail bond contract by BURN, SHAVER, et al.[10]  BARNES was deprived of her constitutional right to be free from impairment of and unilateral breach of the pretrial release agreement and the surety bail bond contract by the State in violation of Texas

---

[9] *Reese v. United States*, 76 U.S. 13, 9 Wall. 13, 19 L.Ed. 541 (1869)(implied covenant on the part of the government that when bail is accepted, it will not in any way interfere with the covenants or impair its obligations).

[10] BARNES was also deprived of due course of law, her equal rights under the law and equal protection under the law when Defendants unilaterally modified and then breached two separate $50,000.00 surety bail bond contracts. These two separate excessive and punitive surety bail bonds extracted $10,000.00 cash from BARNES; and after being coerced to part with $10,000.00 in cash, there was a complete failure of consideration because BARNES was deprived of the benefit of the bargain due to the unilateral breach of contract and intentional impairment of the contract by Defendants acting in concert to deprive BARNES of her liberty and ability to defend herself so that they could set up a Star Chamber and dispose of BARNES for life without a trial.

Constitution Art. I, §§ 16, 11, 13, 19, and 29. BARNES has an equal rights and equal protection right to the due course of law afforded to other residents in Texas pursuant to Texas Constitution, Art. I, §§ 3, 3a, 10, 11, 12, 13, 19, and 28. BARNES has a constitutionally protected right to be free from unreasonable seizures pursuant to Texas Constitution, Art. I, §§ 9, 13, and 19. BARNES was unconstitutionally incarcerated due to the impairment of the obligations and breach of surety bail bond contract by CARNES, MCCABE, MCDONALD, BRADLEY, SHAVER, BURN, SWAIM, GUERRERO MORGAN, et al in violation of Texas Constitution, Art. I, §§ 3a, 16, 11, 13, 19, 27, 28, and 29.

34.    The TDSHS, as do all state agencies, works hand-in-glove with the courts and prosecutors, fabricating any diagnosis or finding and instituting any "treatment" they want.[11] All without any objective standards or means for the accused to seek redress or

---

[11] In this case, the malicious prosecutors dictated the diagnosis of "delusional disorder" and BARNES was detained indefinitely in hostile, punitive, and oppressive pretrial captivity because it is "implausible" that there would be a conspiracy against her and because she is not "rationally competent" when she insists upon her right to a jury trial and will not plea bargain and because she refuses to change her opinion about SCHREIBER and agree to follow his advice to plea bargain.. Thus, although BARNES made 100s on all the objective examinations and had been found to be factually competent, she was deemed "rationally incompetent" (without any objective tests or scientific methodology), because of her beliefs and desired defense. Those who are thrown into the TDSHS system must agree to plea bargain and surrender their right to a jury trial; follow the dictates of the court-appointed attorney and surrender their right to their own defense; and take anti-psychotic drugs, or they will remain "incompetent to stand trial" and be held indefinitely in captivity without a trial and re-committed *in abstentia* in perpetuity *ad nauseum* BARNES steadfastly refused to surrender her constitutional rights and for that reason alone, remained "incompetent to stand trial." One remains "incompetent to stand trial" until they agree to surrender and waive their right to a jury trial; and that was not ever envisioned by the Supreme Court in *Dusky v. United States*, 362 U.S. 402 (*per curiam* 1960). The AG and courts are aware of this continuing abuse of process, but take no action to correct it. This unequal protection under the law is occurring all over the State because the *Dusky* standard was ambiguous and not clearly defined because it was for the State to define the specifics. However, the courts have failed and refused to set standards or clear parameters, which results from these malicious abuses of process and arbitrary and capricious application of the standard. *See also Drope v. Missouri*, 420 U.S. 162, 171 (1975). However, with respect to the involuntary civil commitment that BARNES was also subjected to in order to delay the case and discredit, harm, injure, and damage her further, the Texas Constitution and Texas Health and Safety Code, Title 7, Subtitle C specifically addressed the process, to no avail. The Star Chamber was able to circumvent these legal parameters and commit BARNES in abstentia without a jury trial or without any semblance of the due course of law or equal rights under the law because the AG ignored her letters and reports, the TDSHS conspired with the Star Chamber,

due process because there is absolutely no presumption of innocence within the TDSHS. The treatment of "incompetents" is far harsher and more restrictive than the treatment of NGRIs. All State agencies, including the TDCPRS and TDAPS, follow the orders, dictates, and directions of all other state employees or elected officials without question. The SUPREME COURT and AG know this undisputed fact. Once a citizen is wrongfully accused, they are automatically stripped of their rights and treated as guilty and punished by this interlocking abuse of power within the system. BARNES immediately lost all of her rights without ever being afforded a hearing, due process, or her day in court—summarily punished, abused, and held in captivity in violation of the due course of the law of the land. The actual vindictive verdict obtained through nothing more than vilification and speculation, conjecture, surmise, and hate was nothing more than a formality; the trial was a mockery and the delayed appeal is a mere pretense where BARNES continues to be saddled with and hampered by an ineffective misogynous white male competitor whose only concern is getting paid by the system that railroaded BARNES and is only interested in a superficial appeal to make it appear that justice was done.

35.    CARNES, a recused "judge" and bar member, arranged for SHAVER to act in his place knowing he had no oath of office on file, he was not fair and impartial, would conspire to deprive a female lawyer of her constitutional rights, would aide and abet the wrongful disbarment, and would block BARNES from discovery and presenting the truth and having a fair trial. CARNES and CONNELL remained in control and utilized SHAVER as a mere puppet. Often CONNELL served as the "judge" and SHAVER

---

the media sensationalized it without investigation of the facts, the SBOT-OCDC sanctioned and approved it, the THIRD COURT refused to hear her appeals, and the SUPREME COURT rubber-stamped it.

merely signed off on Orders to give her decisions the appearance of authority; however, they were not judicial acts because CONNELL does not even have a law degree. CARNES continued to issue warrants against BARNES even after his recusal without any jurisdiction and merely to manipulate the case, the media perception of BARNES, and deprive her of a fair trial or any semblance of due course of law or equal rights. Neither ANDERSON nor CARNES were neutral and detached and they knew they could not lawfully and constitutionally serve as a magistrate vis-à-vis BARNES or issue lawful warrants.

36.     Additionally, BARNES alleges and seeks recovery from BURN for breach of surety bail bond contract; and BARNES alleges and seeks recovery from SCHREIBER, DUDLEY, and HOOKS for legal malpractice; and BARNES alleges and seeks recovery against all these individuals for breach of fiduciary duty, in addition to the fraud on the court, obstruction of justice, aiding and abetting the constitutional violations enumerated more fully herein, and generally conspiring against BARNES within the confines of a Star Chamber with the usurpation and violation of BARNES constitutional rights and civil liberties.

## VII.

## DECLARATORY JUDGMENT

1.      This action is being brought pursuant to Chapter 37 of the Tex. Civ. Prac. & Rem. Code. This is a live controversy because the determination of these vital constitutional issues are paramount to justice in Texas and the violations and resulting Star Chambers, wrongful commitments through the malicious abuse of process under C.C.P. art. 46B, the illegal and unconstitutional involuntary commitments, the obstruction of justice, the

destruction and tampering with evidence, the fabrication and tampering with evidence and governmental records, the suborning of perjury, the manipulation of eyewitness identifications, the obstruction of access to the grand jury, the denial of an examining trial, the oppressive and punitive use of bail, the denial of bail and breach of surety bail bond contracts, the forcing of a court-appointed counsel on an accused without any fair avenue for the accused to replace or fire the court-appointed counsel, the coercion of plea bargains without full and honest disclosure, the sloppy investigation and discovery practices, the lack of fairness and openness in the process with full participation by the accused and disclosure of the true set of facts, law, and consequences to the accused is depriving citizens of their declared and retained rights under the Texas Bill of Rights and is allowing an obstruction and denial of those rights by a legal monopoly obstructing access to the courts and equal treatment and rights under the law resulting in wrongful convictions, unjust punishment, and disenfranchisement of the citizens of Texas who are being criminalized in record numbers by the sadistic, sociopathic, predatory, psychopathic subterfuge and pseudo-system of injustice. These issues directly affect the ongoing prosecutions and commitments of innocent Texans all over the State, and the outcome of these issues clearly affect BARNES' rights, her children's rights, her clients' rights, as well as the rights of all citizens accused of crimes in this State; and the resolution of these issues affect BARNES' status under the constitutional, common law, and statutory law and state policies at issue.

2.       There exists a genuine controversy between the parties herein that would be terminated by the granting of declaratory judgment on these constitutional, statutory,

contractual, and common law issues.    Plaintiff therefore requests that declaratory judgment be entered as follows:

1.    BARNES was entitled to present her complaints against TUMLINSON before a grand jury and it was an obstruction of justice for the prosecutors to intercept the packets clearly addressed to the foreman of four separate grand juries and block BARNES presentation and access to the grand jury and request for investigation.

2.    It was an obstruction of justice to destroy or fail to preserve the videotape recording of the incident and not produce or make all these recordings available to BARNES is discovery.

3.    BARNES had a right to reasonable bail and to equal rights that bail not be used to oppress or punish.

4.    BARNES should have had the equal right to be free on bail pending trial by posting bail one time.

5.    CARNES was without jurisdiction to hear and punish a misdemeanor that was never filed.

6.    BARNES had no due process notice that she was being tried and would be subjected to punishment for a fabricated misdemeanor in a district court.

7.    It was a violation of equal rights and due course of law to impair, impede, or interfere with BARNES contractual rights under the surety bail bond contract.

8.    The courts are without jurisdiction to alter, amend, change, modify, or breach the surety bail bond contract without due process notice to the surety, accused, and all parties to the contract.

9.    BARNES had a right to a hearing on the challenge to the truthfulness of the PC affidavit and to suppression of any alleged facts that were not true or supported by probable cause.

10.    BARNES was entitled to represent herself and to appear through counsel of choice.

11.    The accused is not limited to one defense counsel.

12.    BARNES had a right to practice law and could not be obstructed or disbarred without any semblance of due process or due course of law or in violation of equal rights under the law.

13.    SHAVER had no authority and acted in the absence of all jurisdiction when he disbarred BARNES on February 28, 2011.

14.    SHAVER had no authority and acted in the absence of all jurisdiction when he removed BARNES as lead counsel on the case.

15.    The THIRD COURT violated BARNES constitutional and statutory rights by approving the disbarment and refusing to hear BARNES' appeals or grant BARNES motions to compel the clerk and court reporter to file the record on appeal.

16.    The SUPREME COURT deprived BARNES of her constitutional, statutory, and contractual rights by failing and refusing to hear her appeal, compel the filing of the clerk and court reporters record for appeal, and hear the application for *habeas corpus*.

17.    BARNES was disbarred on February 28, 2011 without due process and in violation of due course of law, equal rights, and open courts doctrine.

18.    The THIRD COURT violated BARNES constitutional rights and interfered with BARNES' right to practice law on behalf of her clients and they acted absent all jurisdiction in rubber-stamping the disbarment by any "judge" across the State, which tortiously interfered with BARNES' contractual rights and impeded the fiduciary duty she owed to third parties and impaired the obligation of those contracts in violation of the Texas Bill of Rights.

19.    The SUPREME COURT has established, protected, and maintained a misogynous culture and unconstitutional system in the criminal justice courts through the forced court-appointed attorney system where bar members usurp, violate, waive, and forfeit the rights of the intended beneficiaries in breach of public trust and fiduciary duty with impunity; the malicious abuse of process under 46B with impunity and without recourse for the accused; the malicious abuse of process and violations of the Texas Bill of Rights and Texas Health and Safety Code, Title 7 Subtitle C, with no right to appeal or seek redress of grievances, or other remedy, review, or recourse from wrongful and unconstitutional commitments; the predatory practices of the prosecutors; and the protection racket set up through the SBOT-OCDC whereby the corrupted system is protected and promoted.

20.    It is unconstitutional to summarily disbar a lawyer.

21.    It is unconstitutional to summarily subject a citizen to an involuntary civil commitment.

22.    It is unconstitutional to deprive a citizen of their right to be present at any hearing concerning an involuntary civil commitment, especially when the citizen has previously filed and served a demand to be present.

23.    It is unconstitutional to deprive a citizen of their right to confront evidence and cross-examine witnesses at a hearing concerning an involuntary civil commitment.

24.     It is unconstitutional to deny a citizen a jury trial, especially when they have previously made and served a written demand for jury trial.

25.     It is unconstitutional to allow a court-appointed attorney to waive a citizen's rights to a jury trial, to be present, and to confront and cross-examine with respect to involuntary civil commitments, especially when the citizens has previously filed and served a written demand for these rights and the court-appointed attorneys waiver is in direct contravention of the citizen's assertion of rights.

26.     The rights of the accused belong to the accused and are not ever transferred to or owned by the court-appointed attorney; and therefore cannot be waived or forfeited by the acts or desires of the attorney.

27.     Attorneys are the agents of the client, not the principal, and that legal fiduciary relationship does not depend upon whether the attorney is retained or court-appointed. The attorney owes loyalty, allegiance, fidelity, and a fiduciary duty to the client.

28.     The attorney owes the highest duty under the law to the client and any action taken against the wishes and desires of the client are a breach of fiduciary duty *per se*.

29.     Absent the unconstitutional acts and introduction of hearsay, speculation, conjecture, surmise, and malice, the facts known to GITTEL do not support a conviction for aggravated assault on a public servant with a deadly weapon as a matter of law.

30.     SHAVER acted in the absence of all jurisdiction when he refused to allow BARNES a hearing on her objection to his assignment or make a referral to a neutral judge for hearing.

31.     SHAVER acted in the absence of all jurisdiction when he disbarred BARNES on February 28, 2011.

32.     SHAVER acted in the absence of all jurisdiction when he forced SCHREIBER on BARNES over her strenuous objection and refused to allow BARNES a hearing or any avenue to make a record to preserve her complaints for appeal on April 19, 2011; and then allowed SCHREIBER to repeatedly retaliate against BARNES, violate the fiduciary duty owed to BARNES, violate BARNES constitutional rights, and waive BARNES' constitutional and statutory rights.

33.     SHAVER acted unconstitutionally and in the absence of all jurisdiction when he refused to grant BARNES demand for a jury trial prior to the commitment pursuant to the malicious abuse of process under C.C.P. art. 46B on May 19, 2011.

34.     SHAVER acted unconstitutionally and in the absence of all jurisdiction when he summarily committed BARNES *in abstentia* to an involuntary civil commitment on September 1, 2011.

35.    SHAVER acted unconstitutionally and in the absence of all jurisdiction when he renewed the civil commitment on August 31, 2012 by continuing to deny BARNES demand for jury trial and allowing SCHREIBER to over-ride BARNES' wishes and desires and waive her right to a jury trial, especially when the prosecutors wholly failed to meet their burden of proof.

36.    It is not a crime in Texas for a rural landowner to confront a criminal trespasser on clearly marked and gated private property to deliver a criminal trespass warning; this is not an assault, but a conditional trespass warning to a criminal who has ignored prominent signage and circumvented two gates.

37.    It is not a crime in Texas for a rural landowner to use or display a weapon in the presence of a criminal trespasser when the landowner is on their own clearly marked private property and not engaged in any illegal activity.

38.    BARNES was deprived of equal protection and equal rights under the law where white male rural landowners can deliver criminal trespass warnings while using and displaying a weapon without being arrested, let alone prosecuted and convicted.

39.    It was a constitutional violation for the prosecutors to present a case of deadly conduct when that was not ever part of the indictment. BARNES made objections but DUDLEY failed and refused to protect the record and make the objections during trial even though BARNES had already obtained favorable rulings to keep out speculation, conjecture, surmise, or deadly conduct testimony in her motions in limine. BARNES was convicted on a set of facts that was not alleged in the indictment and it violated due process, due course of law, and equal rights to change up the allegations at trial and have an impaired and incompetent court-appointed attorney who could not or would not understand the difference between deadly conduct and aggravated assault.    The prosecutors had convinced the unprepared and impaired court-appointed attorney that deadly conduct was a lesser and included offense when it was not. Thus, the case was tried upon a jumbled amalgamation of aggravated assault with a deadly weapon and deadly conduct and then only the aggravated assault was submitted to the jury. The true facts did not support a felony conviction and the indictment did not support a felony conviction and certainly not a deadly weapon finding.

40.    It is unconstitutional to convict a citizen based solely on hysterical and histrionic assumptions, speculation, conjecture, and surmise, or aggravated perjury mixed with vilification of the accused, and misstatements of law.

41.    SHAVER acted absent all jurisdiction to enter the judgment and order of conviction while holding BARNES in jail and depriving her of her right to be present at sentencing and common law right of allocution.

42.    It was a fraud on the court to state in the judgment and order of conviction that BARNES was present and provided her right of allocution.

43.    It was a fraud on the court for SHAVER to state that there was an affirmative deadly weapon finding when that was not ever submitted to the jury, misrepresented the facts and the law, violated due process, due course of law, equal rights, equal protection, and was not the truth, but a deliberate manipulation and lie.  One can only have a deadly weapon finding if the weapon was used or displayed during the commission of a felony. SHAVER knowing the allegation was that the weapon was used or displayed during the commission of a misdemeanor assault, he changed the language from the indictment and statutory requirement to "the use or display during the commission of the assault" rather than felony.  SHAVER, BRADLEY, MCCABE, MCDONALD, RENO, PURYEAR, and DUDLEY all conspired and aided, abetted, and assisted in this fraud on the court and that was the reason they held BARNES in solitary confinement and refused to allow her to be present in court or to see the judgment and order of conviction because they knew that they were committing a fraud on the court in order to set up a fraudulent subterfuge to deny BARNES reasonable bail pending appeal, to prevent BARNES from obtaining parole due to the deadly weapon finding, and to cause a permanent mark and bar on BARNES. They knew if BARNES was present that she would object on the record and it would be preserved for appeal.  By keeping BARNES locked up in solitary confinement and dishonestly making it appear that BARNES was present and made no objection to the fraudulent finding or statement of allocution they could commit a fraud on the court and impose the maximum damage and punishment.

44.    It is unconstitutional to obtain a conviction by manipulating, coaching, and bribing a criminal trespasser with money from Victim's Fund—embezzlement and misappropriation of public funds—and to tamper with the criminal trespasser by manipulating her to identify the target in a photo array; by taking her on the property and getting her to change her already false and convoluted testimony; then blocking access to her so the defense has no idea what she will say at trial and to prevent any effective cross-examination or impeachment; to tamper with governmental records and change facts, descriptions, and addresses; and to destroy exculpatory evidence that would prove the truth.

45.    It was unconstitutional to disbar BARNES and deprive her of the right to appear as co-counsel and violation of due course of law and equal rights to limit BARNES to only one defense attorney.  Since court officials and officers of the court, all white male bar members, conspired to obtain this result, it is fraud on the court.

46.    It was unconstitutional to deny BARNES her right to self-representation and abuse of the court appointed attorney system to force or coerce a court-appointed attorney on a citizen when they have not requested one, do not want one, have their own counsel, and does not qualify for one, especially when these same courts are denying court-appointed counsel to others who are requesting representation and do not have sufficient funds to retain a lawyer. This violates due course of law, equal rights, equal protection under the law, and the open courts doctrine.

47.     Citizens have the right to access the grand jury to present any case for investigation; and the current system violates open courts doctrine, equal rights, equal protection under the law, and due course of law.  Blocking access to grand jury and stacking both the grand jury and jury violate due course of law and equal rights and open courts doctrine and constitutes obstruction of justice resulting in fraud on the court.

48.     Framing a citizen in order to defame, discredit, and punish them in order to maliciously abuse process under art. 46B with a view towards summarily committing them *in abstentia* is a violation of due course of law, equal protection, equal rights, and open courts.  When performed by a conspiracy of white male bar members, who are officers of the court or court officials, these unconstitutional acts are an obstruction of justice and fraud on the court.

49.     It is unconstitutional to breach the surety bail bond contract without due process as this violates open courts, habeas corpus, right to bail, due course of law, and equal rights and protection under the law.  These white males, who were court officials or officers of the court, conspired to and aided and abetted the breach of the surety bail bond contract and then conspired with BURN to surrender the bond to cover their tracks; then they rewarded BURN by putting him in charge of the bail bondsmen.

50.     It was unconstitutional to hold BARNES with NO BAIL.

51.     It was unconstitutional to revoke BARNES bail without due course of law.

52.     It was unconstitutional to make a deadly weapon finding against BARNES.

53.     It was unconstitutional to deny BARNES a reasonable bail pending appeal.

54.     It was unconstitutional to deny BARNES a hearing on her request for reasonable bail.

55.     It was unconstitutional to force the deadly weapon finding and 3(g) offense on BARNES.

56.     It was unconstitutional to deny BARNES a hearing on her application for writ of Habeas Corpus.

57.     It was unconstitutional to deny BARNES her right to appeal the wrongful commitments.

58.     It was unconstitutional to hold the commitment moot.

59.     Fraud on the court is unconstitutional and results in void orders and judgments.

60.     Absence of the oath of office is unconstitutional and results in void orders and judgments.

61.    To allow civil parties to object to the assignment of a visiting judge and not allow equal rights and protection to the accused when far more is at stake is a denial of basic, fundamental, structural rights and substantive due process. The denial of a right to object allows for the formation of the heinous Star Chambers because the recused judge and predatory prosecutors with the intent to harm, injure, or deprive a target of a fair and speedy trial, will select a notoriously evil man, as they did in this case, and then they will all together devise a scheme to coerce the accused into having a court appointed attorney who will waive or forfeit all the target's rights.

62.    It is unconstitutional for the court to ever act under the belief that constitutional rights belong to a court-appointed attorney and that he may waive them or forfeit them when the alleged client is asserting them and insisting upon them.

63.    It is a breach of public trust to willfully violate, misconstrue, or misapply the Texas Bill of Rights.

64.    Coercive involuntary treatment, punitive psychiatric abuses, and forced chemical lobotomies are cruel and unusual punishments and unconstitutional.

65.    Isolation, seclusion, solitary confinement, restraint, threats, assault, and false swearing to perpetrate fraud on the court in conspiracy with predatory prosecutors and aiding and abetting malicious abuse of process and fraud on the court to perpetrate and perpetuate wrongful commitment for financial incentives and political reasons is cruel and unusual punishment and unconstitutional.

66.    Deliberate and intentional subjection to violence and attempt to permanently injure, damage, or harm another pre-trial is unconstitutional.

67.    Conspiracy to injure, harm, or damage a citizen mentally, emotionally, and physically or aiding and abetting a conspiracy to seriously injure, permanently impair, or murder a citizen pre-trial is unconstitutional.

68.    Malicious abuse of bail both pre-trial denial and post-verdict denial of reasonable bail pending appeal and refusal to grant a hearing on is unconstitutional.

69.    Placing a deadly weapon finding in a judgment when it is not statutorily or legally justified in order to block and prevent parole is unconstitutional and acting in the absence of all jurisdiction.

70.    It is a violation of the ADA to commit a citizen and not allow them to have access to the courts during commitment or even allow them to designate power of attorney or agent in fact or allow them to appeal the wrongful commitment; and it violates open courts doctrine, due course of law, and equal rights.

71.    The wrongful involuntary civil commitment on September 1, 2011 violated Texas Health and Safety Code, Title 7, Subtitle C, and was the result of fraud on the court and the commitment order is null and void.

72.    It is unconstitutional to fail to toll the statute of limitations during the unwarranted and unconstitutional commitment period because the predatory prosecutors and corrupt courts are maliciously abusing this process to thwart and prevent the filing and presentation of causes of action and complaints. Citizens are involuntarily committed to silence and suppress them, but also to block or obstruct their access to the court in violation of the open courts doctrine and equal treatment and equal rights and due course of law provisions of the Texas Bill of rights, and to hold them for the purposes of running out the statute of limitations, especially on torts, excessive use of force, and other claims of wrongdoing. BARNES was denied access to a computer, law library, or credible means to access the courts while being held in captivity. The courts also deprived her of equal rights by denying and enjoining her ability to execute a power of attorney to appoint an agent in fact to take care of her affairs. It was a violation of BARNES' constitutional rights to enjoin her from naming an agent and blocking her appeal of the commitments, which prevented her from dealing with banks and her estate. BARNES was summarily stripped of her ability to control her estate, business, personal, and legal matters as cruel and unusual pre-trial punishment, resulting in loss, destruction, and damages in excess of $500,000.

73.    BARNES was under a forced legal disability that was unwarranted and unjustified from May 19, 2011 through January 11, 2013 as a direct result of the fraud on the court and conspiracy to harm, injure, and damage another and deprivation of constitutional rights and civil liberties.

74.    The actions described hereinabove violated Texas Constitution, Art. I, Sections 3, 3a, 8, 9, 10, 11, 12, 13, 14, 16, 17, 19, 23, 27, 28, and 29.

75.    Malicious abuse of process under 46B and Texas Health and Safety Code, Title 7, Subtitle C, is human trafficking,[12] especially after denial of bail and right to self-representation. Tex. Const. Art. I, Sections 11 and 10.

76.    It was unconstitutional to confiscate and convert BARNES' property pre-trial without a warrant and refuse to return it.

---

[12] The 2000 United Nations Protocol to Prevent, Suppress and Punish Trafficking in Persons described the Process for human trafficking as the *Recruitment or Transportation or Transferring or Harboring or Receiving* of individuals and the Manner or Means of human trafficking as *Threat or Coercion or Abduction or Fraud or Deceit or Deception or Abuse of Power With the goal of Forced Labor or Involuntary Servitude or Debt Bondage (with unfair wages) or Slavery/Similar practices.* Forced labor is a situation in which victims are forced to work against their own will, under the threat of violence or some other form of punishment, their freedom is restricted and a degree of ownership is exerted. Victims of human trafficking are not permitted to leave upon arrival at their destination. They are held against their will through acts of coercion and forced to work or provide services to the trafficker or others. The arrangement may be structured as a work contract, but with no or low payment or on terms which are highly exploitative.

77.    It was unconstitutional to break into and burglarize BARNES' locked buildings without a warrant.

78.    It was unconstitutional to break into and burglarize BARNES' vehicles without a warrant.

79.    It was unconstitutional to steal BARNES safe without a warrant and refuse to return it.

80.    It was unconstitutional to tortiously interfere with business relations causing the interference with and breach of contracts and breach of fiduciary relationships with clients and the breach of business and personal contracts, including default on debts resulting in threatened loss of land and other assets due to the injunction preventing BARNES from executing a power of attorney and the refusal of banks and others to deal with BARNES while she was in captivity.

81.    The unwarranted and unconstitutional actions are a continuing trespass on BARNES' right to be left alone and her right to privacy—these acts have resulted in a permanent invasion of privacy and continuing injury due to the wrongful conviction, deadly weapon finding, and three involuntary mental commitments that remain permanent mars on BARNES' record and driver's license—these damages result in no employment opportunities, a place to reside, or access to assistance which violates equal rights, due course of law, and open courts. The wrongful conviction resulted in an immediate summary disbarment of BARNES pursuant to the malicious conspiracy as carried out by DEBERRY.

82.    The actions of these bar members constituted a breach of public trust.

83.    The actions described herein violated the 2007 United Nations Declaration of Dresden.

84.    The SBOT is unconstitutional.

85.    The forced membership in the SBOT is unconstitutional.

86.    The requirement to hold a license from the SBOT or forfeit intellectual property rights and valuable first amendment rights is unconstitutional.

87.    The wrongful confiscation and conversion of BARNES' license and right to earn a livelihood was unconstitutional.

88.    The SBOT-OCDC is unconstitutional.

89.    The current practice of protecting predatory prosecutors is unconstitutional.

90.    The current practice of protecting court-appointed officers of the court is unconstitutional.

91.    The current practice of allowing court-appointed attorneys to waive, forfeit, or destroy the constitutional and statutory rights of an accused is unconstitutional.

92.    C.C.P. art. 46B is unconstitutional.

93.    The application and interpretation of C.C.P. art. 46B with respect to BARNES was unconstitutional.

94.    The involuntary commitment of BARNES was unconstitutional.

95.    The renewal of the involuntary commitment of BARNES was unconstitutional.

96.    The current court-appointed attorney system is unconstitutional.

97.    The current court-appointed visiting "judge" system is unconstitutional.

98.    It is unconstitutional to allow civil litigants to object to the assignment of visiting "judges" and not allow a criminal defendant, with much more at stake, to do the same.

99.    It is unconstitutional to allow a criminal judge to hear and determine involuntary civil commitments because, as in this case, the "judge" either does not know or refuses to follow the law, and the accused was deprived of her right to object to the assignment or appointment of a visiting "judge" who is clearly incompetent and biased to hear such a civil matter.

100.    Forcing or coercing a court appointed attorney or psychiatrist or psychologist upon the accused is unconstitutional.

101.    It is unconstitutional for the SBOT-OCDC to act in concert with other bar members to conspire to summarily disbar a competitor without due process, due course of law, equal protection under the law, in violation of equal rights and depriving them of basic, fundamental, and structural rights and substantive due process.

102.    The "vexatious litigant" statute is unconstitutional.

103.    The "unauthorized practice of law" statute is unconstitutional.

104.    The current system for court-appointment of attorneys, psychiatrists, psychologists, and other "experts" as well as the assignment of "visiting judges" is unconstitutional.

105.    The monopoly on the practice of law, especially through the oppressive SBOT-OCDC that routinely deprives litigants of equal treatment, equal rights, and due course of

law, is unconstitutional. The legal devices, subterfuges, and artifices designed to be overly broad and vague in scope are abused routinely to protect, promote, and perpetuate an unconstitutional monopoly and usurpation of God-given rights to access, ability to speak and be heard, and capacity to direct one's own affairs, enjoy freedom and privacy, and exercise freely the right to be left alone and to associate or not associate as one's own independent and free conscience directs. Citizens have a natural, organic, and vested right to live freely and direct their own affairs free of oppression, suppression, retaliation, and terrorism. These rights cannot be freely and effectively protected and preserved when one does not enjoy equal access to the courts, to practice law, and consult with counsel of one's own choice. The devices, subterfuges, and artifices fraudulently sold as a "protection for the public good" are nothing more than instruments of oppression, suppression, and control—the court-appointed attorney system, the "visiting judge" scam, the "vexatious litigant" labeling, the summary disbarments for speech only conduct, the political, social, and economic oppression by the SBOT-OCDC, and the "unauthorized practice of law" patrol and brigade are all designed to create a fraud on the court, obstruct justice, and deny the citizens equal and free access to the courts and meaningful redress of grievances and reasonable oversight and appeals to obtain accountability and responsibility from their rogue agents. Rogue agents usurp and denigrate the rights of the principal and act as if they were the principal rather than a fiduciary agent—just like court appointed officers of the court.

106. The use of the funds from Victim's Services or the Victim's Fund for the compensation for aggravated perjury is unconstitutional.

107. The ubiquitous "binding arbitration clauses" in consumer contracts are contracts of adhesion, fascist in nature, and violate the open court's doctrine, due course of law, and equal protection and equal rights, as well as being unconstitutional under the Texas Constitution.

3. BARNES request that this Court issue a declaratory judgment that Defendants unlawfully deprived BARNES of her right to free speech, freedom of association, to privacy and to be left alone, to be free of pretrial punishment and captivity, to a speedy trial, to a fair jury, to represent herself, to one bail without unilateral modifications or breaches, to exculpatory evidence, to due process, to equal protection under the law, to be free from unreasonable searches and seizures, and right to redress of grievances without retaliation and malicious, vindictive prosecutions.

4. The Texas Constitution guarantees the right of Texas citizens to represent

86

themselves in court and to handle their own legal matters if they choose. A license to practice law also allowed BARNES to appear and represent herself in court and to have as many co-counsels as she desired to handle different parts of the representation. SHAVER could only force stand-by counsel on BARNES, he could not tortiously interfere with her license nor could he prevent her from representing herself. By forcing BARNES into the Star Chamber, BARNES was deprived of the three-cord protection afforded by Texas Constitution, Art. I, Section 10 "to appear, by herself, through counsel, or both" because in fact, she was denied both. She could neither represent herself nor appear through counsel. It is a mockery to say that SCHREIBER, DUDLEY, or HOOKS represent BARNES' interests when they are so openly hostile towards BARNES and continuously usurp her rights and treat them as their own. In 1876, the year that Texas adopted its current Constitution, most people represented themselves in court and counsel was really there to assist them, not circumvent them—waiving and forfeiting their constitutional rights. There was no regulation or license to practice, or SBOT-OCDC to bully and protect this corrupted practice or to monopolize the practice of law, so lawyers were more honest, available, and accountable to the citizens because anyone could practice law. No one ever would have imagined that anyone other than the accused had these rights to appear and present his own defense. The majority of Texas had been under Spanish rule and a brief 24 year stint under the newly formed Mexican government, or they were immigrants from Germany; so, they took precautions to prevent the formation of Star Chambers and the monopolization of the courts by a cartel that enforced a requirement of a license to do an act that inherently and naturally belongs to each individual—to represent himself or herself in a court of law without hindrance,

87

interference, or fraud being perpetrated upon him or her by those entrusted with the administration of justice. A citizen must have control over the defense if it is to be his defense at all and counsel must remain assistance, not subversion. *See*, John Sayles' book, A Manual of the Laws of Business, with Forms for Business and Legal Transactions in the State of Texas. The introduction to Mr. Sayles' book stated over 120 years ago:

> The mercantile classes, for whom works of this character are chiefly designed, are at the present day so generally educated and enlightened that it is not a matter of surprise they should desire to understand the general principles of law which govern their ordinary business transactions, and to be independent of professional assistance in putting their ordinary agreements into legal form. Such a desire is not only natural but is reasonable and praiseworthy, and may be safely indulged within the limit indicated.

Citizens must be free to conduct their own legal affairs and choose themselves whether and when to consult a lawyer or appoint an agent in fact under a lawful power of attorney. These rights were denied BARNES from February 28, 2011 and continue to be denied to her.

5.    BARNES seeks a declaration that under Texas law, properly construed in light of the restraints imposed by the Texas Constitution, that this court define and impose limits on the vague term "competent to stand trial" or "present ability to consult with an attorney" or "rational understanding" to include the right of an accused to direct his own defense, disagree with or reject legal advice, and pursue his own course without being confined pre-trial and held in captivity until he relents and agrees to take and follow the advice of counsel. In this case, BARNES with almost 30 years of experience trying cases, was supposed to submit, capitulate and bow to the dictates of a senile, impaired,

misogynous, condescending old man who had not ever tried a case in Texas, not even a misdemeanor, and had not tried any case in over two decades. Of course, SCHREIBER would coerce a plea-bargain—he was incompetent and unable to try a case—that is why MCCABE insisted upon having him appointed—to make sure BARNES would never get to trial. A definition so broad that it allows a Star Chamber to pretend that a seasoned trial lawyer and criminal defense attorneys is "incompetent to stand trial" or has no "present ability to consult with an attorney" or has no "rational understanding" especially when SCHREIBER had not even spoken with or communicated with BARNES after she fired him in April 2011, is unconstitutional and impermissibly vague and overly broad in its application, reach, and impact. This is especially critical where the court has taken away any right to appeal or alternative remedy when these wrongful commitments are used for an improper purpose or to delay the case create a fabricated motive, as it was in this case, or to defame, marginalize, coerce, or punish the accused, as it was in this case.

6.    BARNES seeks a declaration that under Texas law, properly construed in light of the restraints imposed by the Texas Constitution, that this court define and impose limits on the term "moral turpitude" in order to prevent the summary disbarment of BARNES and others similarly situated based on the true facts of this case without all the sensationalism, hatred, vilification, speculation, conjecture, surmise, and perjury. This is especially important where Eric Turton in San Antonio, a white male bar member, was not summarily disbarred but was given full due process. This would violate the equal rights and due course of law *per se.* BARNES seeks a declaration that under Texas law, properly construed in light of the restraints imposed by the Texas Constitution, that this court define and impose limits on what a landowner can lawfully do in delivering a

criminal trespass warning and bearing arms in defense of himself and his property against a criminal trespasser who has willfully ignored all criminal trespass signs and intentionally violated the trespassing laws of Texas. To allow white male landowners to bear arms and to deliver criminal trespass warnings to protect their property and not allow the same right to female landowners, violates the equal rights and due course of law provisions of the Texas Constitution.

7.    BARNES seeks a declaration that under Texas law, properly construed in light of the restraints imposed by the Texas Constitution, that this court define and impose limits on the forcing of a court-appointed counsel on an accused and what the court-appointed counsel can do when their client objects or opposes it.

8.    BARNES seeks a declaration that under Texas law, properly construed in light of the restraints imposed by the Texas Constitution, that this court define and impose limits on the use and abuse of bail as a form of oppression, coercion, or punishment.

9.    BARNES seeks a declaration that under Texas law, properly construed in light of the restraints imposed by the Texas Constitution, that this court define and impose limits on the legal requirements for an involuntary civil commitment and declaration that it not be used as a form of delay, punishment, abuse, or oppression as it was here and that it not become a tool of coercion, suppression of rights, and defamation.

10.    BARNES seeks a declaration that under Texas law, properly construed in light of the restraints imposed by the Texas Constitution, that this court define and impose limits on the right of an accused to object to the formation of a Star Chamber and to seek interlocutory appeal to challenge the legality of the court or the refusal of the court to grant a hearing on the objection to assignment, objection to the court-appointed counsel,

90

the refusal to grant a jury trial, the interference with the right to be present, the refusal to grant a hearing on an application for writ of *habeas corpus*, denial of bail, denial of examining trial, obstruction of justice and access to the courts and denial of equal rights.

11.    BARNES seeks a declaration that under Texas law, properly construed in light of the restraints imposed by the Texas Constitution, that this court define and impose limits on the right of the accused to discovery, equal access to the accuser and other witnesses and evidence, and ability to make the state collect, preserve, and produce the evidence and records.

12.    BARNES seeks a declaration that under Texas law, properly construed in light of the restraints imposed by the Texas Constitution, that this court define and impose limits on the remedies available to the accused when the PC affidavit is false, fraudulent, and filled with lies and the court refuses to set or hear a challenge to the truthfulness of the PC affidavit.

13.    BARNES seeks a declaration that under Texas law, properly construed in light of the restraints imposed by the Texas Constitution, that this court define and impose limits on the right to an examining trial and the ability of a bar member to deprive a citizen of this valuable and crucial right, especially when the same bar member is stacking the grand jury and the conspirators are tampering with and obstructing the grand jury process. This deprives the accused of both procedural protections under the law and deprives the accused of substantive due process, equal treatment and equal rights under the law, and due course of law.

14.    BARNES seeks a declaration that under Texas law, properly construed in light of the restraints imposed by the Texas Constitution, that this court define and impose limits

on the ability of a judge to unilaterally force a deadly weapon finding on the accused when there was no use or display of a weapon during the commission of a felony as required by statute. This unconstitutional action is capable of repetition yet evading review as are the wrongful commitments because the wrongfully convicted person who has been deprived of bail pending appeal is also denied parole based on the deadly weapon finding and is forced to serve the full sentence day for day during the time the case is on appeal.

15.    BARNES seeks a declaration that under Texas law, properly construed in light of the restraints imposed by the Texas Constitution, that this court declare that BARNES' constitutional, statutory, and contractual rights were violated and interfered with, including but not limited to her equal rights guaranteed by Art. I, Section 3a of the Texas Constitution; and her rights under Art. I, Section 10, 11, 12, 13, 15, 15-a, and 19; the right guaranteed to all citizens to apply to those invested with the powers of government for redress of grievances or other purposes, by petition address or remonstrance, as guaranteed by Article I, Section 27 of the Texas Constitution; the right of the Individual and others similarly situated persons to represent themselves in court and in legal matters affecting their own interests, as guaranteed by the Texas Constitution; the due course of law guaranteed to all citizens in Article I, Section 13 of the Texas Constitution; the guarantee provided by Article I, Section 13 of the Texas Constitution that the courts in Texas will be open to all; the right of all persons to pursue a lawful occupation guaranteed by the Texas Constitution; and the right to privacy and to be left alone guaranteed to all persons by the Texas Constitution.

16.    BARNES seeks a declaration that the Texas Constitution and Bill of Rights

prohibits the enjoining, restraining, or otherwise limiting the exercise of these rights as was done in this case, including but not limited to the right to practice law either in one's own behalf or pursuant to a duly issued license; the right to due process and a jury trial prior to commitment under 46B or an involuntary civil commitment; the right to a fair and impartial tribunal; the right to a speedy and fair trial; the right to be free of media defamation and a permanent false and defamatory publication without a trial or due process; the right to be free from armed home invasion by wayward deputies and free from burglaries of your home, buildings, and vehicles by wayward deputies; the right to be left alone; the right to privacy; the right to designate a lawful agent pursuant to a power of attorney; the right to manage one's own affairs and business; the right to be free from tortious interference with and breach of surety bail bond contracts or other legal agreements; the right to be free from being targeted, framed, retaliated against, defamed, and punished for speech only conduct, for exercise right to earn a livelihood, for political activism, and from filing a lawsuit; the right to be free from excessive bail or from bail being used as an instrument of oppression and punishment; the right to the full panoply of rights without being forced to choice or give up one to secure another.  Every action undertaken by these bar members, acting in concert, was designed to obstruct the judicial process, delay the case, and deprive BARNES of a fair and impartial tribunal and trial. These were unconscionable schemes designed to disrupt lawful process and to deceive and make misrepresentations of law and fact through the judicial process and lend legitimacy and truth to false and fraudulent claims, defamation per se, and to ward off civil liability or criminal prosecution for the crimes, wrongdoings, and malicious acts of the conspiracy.  The intent was to subvert truth and justice and deprive BARNES of her

rights in order to commit or convict with the sole aim to discredit, defame, and disbar BARNES.

17.    BARNES is entitled to the declaratory judgment sought hereinabove as a matter of law upon the uncontested facts. However, in the event that the Court nonetheless rules that there are some facts in good faith dispute or that the Texas Constitution may permit these heinous acts of violence, then BARNES hereby request a trial by jury for the determination of all issues of fact, as is her right under Section 37.007, Tex. Civ. Prac. & Rem. Code and Rule 216, Tex. R. Civ. P.

<u>PRAYER FOR DECLARATORY RELIEF AND ATTORNEY'S FEES.</u>

18.    BARNES respectfully requests that this Court take jurisdiction of this case, and that upon hearing this matter this Court enter a final judgment (1) decreeing all matters set forth hereinabove, including the rights, duties, and obligations of the parties; (2) decreeing the portions of the Texas Constitutional and statutory law and contractual obligations that should have protected BARNES or prevented this harm so that others similarly situated can benefit and avoid this dangerous trap; (3) decreeing that the pretrial punishment imposed, captivity, and constitutional violations caused harm to BARNES in an amount to be heard and determined by a jury; (4) awarding the Plaintiffs their reasonable attorney's fees and costs, as provided by Tex. Civ. Prac. & Rem. § 37.009; and (4) awarding Plaintiffs such further relief to which they may be entitled. Plaintiffs are entitled to attorney's fees as are equitable and just, as authorized by the Declaratory Judgment Act. *See* Tex. Civ. Prac. & Rem. Code Ann. § 37.009 (Vernon 1997), and Plaintiffs seek all relief available pursuant thereto.

VIII.

94

## CONFLICT OF INTEREST DISQUALIFYING ATTORNEY GENERAL and REQUEST FOR APPOINTMENT OF ATTORNEY GENERAL PRO TEM

1.    The Tex. Health & Safety Code, Title 7, Subtitle C, Sec. 571.020 provides for CRIMINAL PENALTIES for its violation.  (a)  A person commits an offense if the person intentionally causes, conspires with another to cause, or assists another to cause the unwarranted commitment of a person to a mental health facility.

(b)  A person commits an offense if the person knowingly violates a provision of this subtitle.

(c)  An individual who commits an offense under this section is subject on conviction to:

(1)  a fine of not less than $50 or more than $25,000 for each violation and each day of a continuing violation;

(2)  confinement in jail for not more than two years for each violation and each day of a continuing violation;  or

(3)  both fine and confinement.

(d)  A person other than an individual who commits an offense under this section is subject on conviction to a fine of not less than $500 or more than $100,000 for each violation and each day of a continuing violation.

2.    BARNES has sought the protection and assistance of the Texas Attorney General on numerous occasions and has received no response or assistance.  The Texas Attorney General has a conflict of interest because of his affiliation with the Republican party and will believe and protect members of his own political party and employees of state entities, organizations, or agencies.  Thus, BARNES is being deprived of her rights under

95

the Texas Health and Safety Code and there are exigent circumstances and a dire necessity for this court to appoint a neutral, detached, and independent Attorney General Pro Tem who has no connections or affiliations with the Republican party or any other social, political, or personal reason to protect them.

3.      Sec. 571.023 also provides for a CIVIL PENALTY. (a) A person is subject to a civil penalty of not more than $25,000 for each day of violation and for each act of violation of this subtitle or a rule adopted under this subtitle. In determining the amount of the civil penalty, the court shall consider:

      (1) the person's or facility's previous violations;

      (2) the seriousness of the violation, including the nature, circumstances, extent, and gravity of the violation;

      (3) whether the health and safety of the public was threatened by the violation;

      (4) the demonstrated good faith of the person or facility; and

      (5) the amount necessary to deter future violations.

   (b) The department or party bringing the suit may:

      (1) combine a suit to assess and recover civil penalties with a suit for injunctive relief brought under Section 571.022 or 577.019; or

      (2) file a suit to assess and recover civil penalties independently of a suit for injunctive relief.

4.      These parties have been on notice of these violations and the civil penalties sought by BARNES there under, in addition to the $7,000 per day penalty for the oppression and constitutional violations as set by contractual agreement when the leg-

iron was forced onto BARNES in violation of her constitutional rights.

5.      BARNES seeks recovery of both the criminal and civil penalties from the responsible parties, jointly and severally, due to the conspiratorial nature of the fraud on the court and the willful aiding, abetting, and assisting required to obstruct justice.

6.      The Attorney General has a conflict of interest just as all members of the Republican Party do, but also because BARNES repeatedly sought assistance from his office and those requests were ignored or she was referred to the FBI, which only triggered more retaliation causing MCCABE, upon learning of the visit from the FBI agent, to immediately file a motion to increase bail to hold BARNES in jail or motion for mental exam for sanity, mental illness, and mental retardation in order to commit BARNES.  Within four hours, MCCABE's immediate reaction was classic—lock BARNES away either in jail or in a psychiatric facility.  These psychopathic bullies know nothing about human interaction; they only employ threats, oppression, coercion, and terrorism against the citizens.

IX.

**INJUNCTIVE RELIEF SOUGHT**

1.      The allegations contained in the above paragraphs and all the facts and arguments set forth hereinabove are hereby incorporated by reference herein, the same as if fully set forth at length and verbatim for any and all purposes of this pleading.

2.      BARNES seeks injunctive relief as follows:

    a.      Pursuant to Article I, Section 8 of the Texas Constitution, BARNES seeks a permanent injunction against the media defendants enjoining them from continuing to publish the defamatory per se statements and that this court order them to remove them.  Since the court cannot permissibly enjoin future publication, BARNES will be seeking punitive and exemplary damages that may prevent a repeat of this

97

malicious action against other innocent citizens being targeted, framed, and railroaded. It is the only way to prevent the media defendants from aiding and abetting criminal conspiracies that cause irreparable harm, injury, and damages to the citizens of Texas. The repetition of malicious gossip and false accusations is not news or reporting, and it serves no legitimate public interest. It is there to maliciously entertain and reinforce the stereotypes that men seek to portray and predatory prosecutors abuse to their advantage to deprive the targets of any presumption of innocence or hope for a fair and speedy trial.

b.   Pursuant to Article I, Section 3a of the Texas Constitution, BARNES seeks a permanent injunction against the prosecutors, deputies, law enforcement officers, and criminal justice courts to apply the laws equally and render the same treatment to all citizens regardless of race, color, gender, or ethnicity.

c.   Pursuant to Article I, Sections 9, 13, 19, and 29 of the Texas Constitution, BARNES seeks a permanent injunction against prosecutors, deputies, law enforcement officers, and criminal justice courts not to abuse the criminal statutes to retaliate, punish, or oppress the citizens for their political or religious beliefs or practices, political activism, or the filing of a lawsuit or complaint or serving as a witness, complainant, or informant.

d.   Pursuant to Article I of the Texas Constitution, BARNES seeks a permanent injunction against prosecutors to cease and desist the malicious abuse of process and vindictive prosecutions against defense counsel to oppress, silence, or retaliate.

e.   Pursuant to Article I of the Texas Constitution, BARNES seeks a permanent injunction against the prosecutors, judges, court officials, and officers of the court, including court appointed psychiatrist/psychologist, to cease and desist the fraud and malicious abuse of 46B to delay the case, run out a statute of limitations to avoid liability, to defame or harm, or any other unlawful or illegitimate purposes.

f.   Pursuant to Article I, Sections 9, 13, 15a, 19, and 29 of the Texas Constitution, BARNES seeks a permanent injunction against court officials and officers of the court, including psychiatrists and psychologists appearing before the court to cease and desist the fraud and the malicious abuse of civil commitments especially against females and other members of a suspect class.

g.   Pursuant to Article I, Sections 9, 11, 12, 13, 19, and 29 of the Texas Constitution, BARNES seeks a permanent injunction against the court

98

officials and officers of the court to cease and desist in the malicious abuse of bail to oppress and punish or deprive of freedom pretrial for no legitimate purpose.

h.    Pursuant to Article I of the Texas Constitution, BARNES seeks a permanent injunction against the court officials and officers of the court to cease and desist from making fraudulent findings of a "3(g) offense" or a deadly weapon finding in judgments of conviction to fraudulently deny reasonable bail pending appeal, or to prevent parole, or to impose lifelong and permanent damages or for any other unlawful or improper purpose.

i.    Pursuant to Article I of the Texas Constitution, BARNES seeks a permanent injunction against the SBOT-OCDC to cease and desist engaging in ex parte discussions with certain bar members about actions to be taken against another bar member; all accusations should be put in writing on the proper form, fully investigated. The SBOT-OCDC should not ever conspire with one bar member against another bar member in secrecy; nor should the SBOT-OCDC allow its employees to serve as complainant, investigator, and prosecutor as DEBERRY did against BARNES.

j.    Pursuant to Article I, Sections 3, 3a, 9, 10, 13, 19, and 29 of the Texas Constitution, BARNES seeks a permanent injunction against the judges, court officials, prosecutors, officers of the court, and all bar members to cease and desist the usurpation of the rights of the accused; and to cease and desist the gross negligence or willful conduct of waiving, forfeiting, or ignoring the constitutional rights of the accused; and to cease and desist in interfering, impeding, or disrupting the free exercise of the full panoply of rights protected and reserved by the Texas Bill of Rights, including the accused's right to be heard and to represent himself, as well as having access to the advice and assistance of counsel.

k.    Pursuant to Article I, Sections 3, 3a, 9, 10, 11, 12, 13, 14, 16, 19, 27, 28, and 29 of the Texas Constitution, BARNES seeks a permanent injunction against the judges, court officials, officers of the court, and court personnel to cease and desist utilizing the current court appointment system until the system is cleaned up and brought into compliance with the Texas Constitution by putting the accused back in charge of his rights, ensure a fair and impartial tribunal, and a fair and effective defense.

l.    Pursuant to Article I of the Texas Constitution, BARNES seeks a permanent injunction against the judges, court officials, officers of the

99

court, and court personnel to cease and desist in the formation of Star Chambers against the rights of the accused.

m.  Pursuant to Article I of the Texas Constitution, BARNES seeks a permanent injunction against the judges, court officials, officers of the court, and court personnel to cease and desist with any and all blocking, hindering, denying, or other deprivation of the accused's fundamental rights, including his right to appeal. These rights are forever inviolate and no court-appointed attorney or other legal subterfuge can cause the evaporation, forfeiture, or waiver of these essential rights. Only the accused, when he is competent and fully informed, and the accused alone, waive any of his rights.

n.  Pursuant to Article I of the Texas Constitution, BARNES seeks a permanent injunction against the use of legal artifices and subterfuges designed to deprive the citizen of equal protection, equal rights, and equal access to the courts, or to violate the open court's doctrine or due course of law protections of the Texas Bill of Rights or forever compromise the republican form of government in Texas, including but not limited to the overly broad, vague, and oppressive language and twisting of language to suit the anti-citizen position, and oppressive application and extreme enforcement of the "vexatious litigant" statute, the "unauthorized practice of law" statute, and the binding arbitration clauses ubiquitous in all consumer contracts and transactions.


## X.

## VIOLATIONS OF THE SPIRIT OF TEXAS LAW AND DOMESTIC TERRORISM

1.  The allegations contained in the above paragraphs and all the facts and arguments set forth hereinabove are hereby incorporated by reference herein, the same as if fully set forth at length and verbatim for any and all purposes of this pleading.

2.  These defendants violated the spirit and letter of the laws of Texas. The Texas Free Enterprise and Antitrust Act is part of the Texas Business and Commerce Code. The Texas False Claims Act ("TFCA") and other Texas laws impose liability on persons or companies that make or cause to be made false or fraudulent claims to the government

for payment or who knowingly make, use or cause to be made or used, a false record or statement to get a false or fraudulent claim paid by the government. It is unclear by what method or source of funds all the money was paid, moved around, and misappropriated to orchestrate this fraud on the court, so after the completion of discovery, more claims could be added. Texas Medicaid Fraud Prevention Law ("TMFPL"), Tex. Human Resources Code §§ 36.001-36.132; (2) The Texas False Claims Act, Tex. Human Resources Code § 32.039; (3) Tex. Government Code. § 531.101; and (4) Tex. Health & Safety Code §§ 161.132-161.134.

3.    Further, according to a memo produced by the FBI's Terrorist Research and Analytical Center in 1994, domestic terrorism was defined as "the unlawful use of force or violence, committed by a group(s) of two or more individuals, against persons or property to intimidate or coerce a government, the civilian population, or any segment thereof, in furtherance of political or social objectives." U.S. Department of Justice, National Security Division, Federal Bureau of Investigation, Terrorist Research and Analytical Center, *Terrorism in the United States, 1994.* (Washington, DC), 26. Under current law, set forth in the USA PATRIOT Act, acts of domestic terrorism are those which: "(A) involve acts dangerous to human life that are a violation of the criminal laws of the United States or of any State; (B) appear to be intended— (i) to intimidate or coerce a civilian population; (ii) to influence the policy of a government by intimidation or coercion; or (iii) to affect the conduct of a government by mass destruction, assassination, or kidnapping; and (C) occur primarily within the territorial jurisdiction of the United States."

4.    Also, the *Dictionary of Political Thought* defines "extremism" as:

A vague term, which can mean: 1) Taking a political idea to its limits, regardless of 'unfortunate' repercussions, impracticalities, arguments and feelings to the contrary, and with the intention not only to confront, *but also to eliminate opposition.* 2) Intolerance towards all views other than one's own. 3) Adoption of means to political ends which show *disregard for the life, liberty, and human rights of others. See,* _Roger Scronton, *Dictionary of Political Thought,* (New York: Hill and Wang, 1982).

5.    Radicalized, far-right political beliefs and extremist views are misogynous, as well as conducive to and supportive of obstruction of justice, fraud on the court, retaliation, abuse of office, abuse of power, coercion, threats, violence, violations of constitutional and civil rights, and oppression, particularly against members of suspect classes based on race, gender, sexual orientation, social-economic class, and/or status as an informant or complainant exposing wrong-doing by employees, agents, representatives, attorneys, and law enforcement personnel.[13]    BARNES has been

---

[13] All of the deprivations set forth herein were all well-recognized at the time of these events, as shown by various published and circulated trade publications for law enforcement, e.g., a 2006 publication which specifically stated: "Protecting Civil Rights: A Leadership Imperative: All law enforcement leaders recognize the ethical and legal imperatives to which they and their officers must adhere to ensure that civil rights of all individuals in their communities are protected. Law enforcement officers, in fact, are the most visible and largest contingent of the nation's guardians of civil rights. Every police officer commits to upholding the nation's prime guarantor of rights, the U.S. Constitution, when sworn into office. To be effective, a police department and its individual officers must be seen primarily as protectors of civil rights, rather than agents of social control whose main purpose is to limit individual freedoms. The effectiveness of police in their varied missions—from law enforcement to community service—depends on the trust and confidence of the community. Public trust and confidence are severely reduced when individuals' civil rights are compromised. And when any community perceives that its civil rights are systematically violated by the police, all sense of trust, cooperation, and partnership between the police and that community will be undermined. Understanding these ethical imperatives, law enforcement leaders must be continually vigilant to ensure that the actions of their officers do not violate civil rights and do not compromise public support. Officers are granted a tremendous amount of authority and discretion to enforce the law, that is, to protect individual rights from being infringed upon by others in the community. At the same time, officers themselves must act within the confines of the Constitution while executing their tremendous power and wide discretion. They must never consider themselves above the law while executing their responsibility to enforce the law. This commitment is what distinguishes police in constitutionally based, democratic societies like ours from police in nondemocratic countries, where they too often are perceived as oppressive agents of a government whose main purpose is to restrict, rather than protect, the rights of civilians...Law enforcement leaders bear the tremendous responsibility to ensure that individual officers and units within their agencies uphold the law and its most basic guarantees... In the case of officers who systematically violate civil rights, their behavior must not be tolerated and action must be decisive and uncompromising. Effective leaders, supported by the managers who serve them, must strive to identify and intervene when officers exhibit potentially problematic behavior before it escalates to the point of violating civil rights.

oppressed due to her deeply held spiritual beliefs of conscience and her refusal to worship the uniform, robe, or other regalia of usurped power and stolen valor. Frank G. McGuire, a renowned expert on domestic terrorist groups, further expands on the characterization of extremist traits in his summation that they have three things in common. First, extremists commonly represent some attempt to distort reality for themselves and others. Secondly, they try to discourage critical examination of their beliefs, either by false logic, rhetorical trickery or some kind of intimidation. And finally, extremists represent an attempt to act out private, personal grudges or rationalize the pursuit of special interests in the name of the public welfare. Frank McGuire is the editorial director of the biweekly

Against this backdrop, the seriousness of law enforcement leaders' responsibility to communicate a consistent and far-reaching commitment to civil rights protections cannot be overstated. Although laws, departmental policy directives, and standard operating procedures are critically important, law enforcement executives' leadership and communication skills are the most critical elements for ensuring that officers regularly exercise sound judgment and engage in professional and ethical policing. Law enforcement leaders can and must demonstrate a fundamental and complete allegiance to civil rights protections in a coordinated manner using multiple approaches. They must clearly convey a simultaneous commitment to effective law enforcement and civil rights protection; they must codify this commitment in their agency's mission statements; they must ensure that their department's polices are clear, sound, and consistent with civil rights guarantees; they must train and supervise officers in manners that are consistent with this commitment; and they must respond to alleged civil rights violations with vigilance and with fair and decisive action. As law enforcement leaders succeed in these regards and make these efforts transparent to the public, they validate the core premise that civil rights protection is not only an ethical and legal imperative but a practical imperative as well. Protecting civil rights is good for police, good for the community, and essential for maintaining the partnerships that must exist between the two...We must remember that any oppression, any injustice, any hatred is a wedge designed to attack our civilization... It should be clear to police leaders that they must develop policies, training, and accountability." Protecting Civil Rights: A Leadership Guide for State, Local, and Tribal Law Enforcement, Prepared by the International Association of Chiefs of Police, September 2006. The AG is ultimately responsible to set and implement policies, procedures, and effective discipline to instill these values in law enforcement personnel. The AG is failing in this regard and the predatory prosecutors and judges, including appellate courts and their SBOT-OCDC enforcement arm, are aiding, abetting, and assisting these increasingly violent violations of the Texas Bill of Rights.. The AG and appellate courts have allowed a pattern or practice of civil rights violations including the following:

• Unlawful or excessive use of force
• Inadequate training on use-of-force techniques
• Racial profiling and racial/sexual/economic discrimination
• Illegal stops and searches
• Intimidation, manipulation, and coercion by police
• Harassment of civilians in retaliation for reporting misconduct
• Inadequate supervision and tampering with governmental records, witnesses, and evidence
• Failure to establish a meaningful civilian complaint process and failure to investigate officer misconduct.

newsletter report, "Counter-Terrorism and Security Intelligence." He specializes in law enforcement and security as they involve terrorism and intelligence operations. Frank G. McGuire, *Security Intelligence Sourcebook*, (Silver Spring, MD: Interests, Ltd., 1990) 102-104. Frank McGuire has described these defendants in more detail in his publications.

6.     BARNES has a natural, organic, substantive right to live free of domestic terrorism and far-right radicalism and "tough on crime" extremism and histrionics that served to oppress, suppress, and invade privacy of the citizens. These defendants not only invaded BARNES' privacy but violated her right to be left alone. Their extremist views and fascist tactics suppress speech, oppress associations, and hinder redress of grievances. The SBOT-OCDC and predatory prosecutors are organizations that intimidate through threats of violence because conspiracies to violate constitutional rights are acts of violence. BRADLEY, DEBERRY, MCCABE, MCDONALD, SHAVER, CARNES, and other bar members exerted and abused their positions of power to control the Star Chamber, including but not limited to SCHREIBER, DUDLEY, and HOOKS and HUMES, BORYNSKI, and JOHNSON as well as the policies and practices of the TDSHS aided, abetted, and assisted them in their fraud on the court, misappropriation of state funds, obstruction of justice, and acts of domestic terrorism. All state agencies conspire to violate fundamental rights and commit acts of domestic terrorism against the citizens accused of crimes. Thus, all a predatory prosecutor has to do is file false and fraudulent charges against an officer of the court set to expose his corruption, and the full funds and power of all the state agencies come to bear against the accused citizen. The laws are tossed aside and the Star Chamber operates unimpeded by any oversight or

appellate correction or review. The writ of habeas corpus is suspended; the laws are suspended; and justice is suspended. This strikes at the very heart of the Texas Bill of Rights as clearly stated in Article I, Section 29 and constitutes acts of domestic terrorism.

7.    A relatively thorough historical review of the evolution and employment of terrorism is provided by Walter Laqueur of the Center for Strategic and International Studies (Washington, D.C.) in his book, *Terrorism*. *See,* Walter Laqueur, *Terrorism,* (Boston: Little, Brown and Co., 1977), 3-20. He discusses how terrorism has evolved from its original purpose as a means of eliminating specific individuals from government or society, participating in terroristic activities to achieve political goals. A more accurate and realistic definition of the currently accepted use of the word 'terrorism' must infer that the violence is directed against civilian, non-combatants. Many of local law enforcement and deputies are ex-military hired without any debriefing, and often in the grip of PTSD. Terroristic organizations and groups do exist within the ranks of the military, the full extent is yet unknown. These incidents of terroristic or extremist activities have been primarily associated with individuals involved in extreme right-wing and/or white-supremacist hate groups, and they seem to reflect a growing racial hate-oriented tension which is occurring in the civilian society as well. The military acknowledges this growing problem; however, when military personnel are discharged, the vast majority of military personnel find themselves in local law enforcement organizations, such as the Williamson County Sheriff's Office and the Travis County Sheriff's Office, upon discharge. The civilian law enforcement agencies are doing nothing to debrief, re-educate, or monitor these extremist's misogynous views.

8.    The Texas Attorney General is ultimately responsible for dealing with the

105

misogynous culture in law enforcement; yet, has not acted to protect citizens, especially women, children, and minorities, of this State from these law enforcement abuses, assaults, aggravated kidnappings, and murders. The Attorney General owes the citizens of Texas the public duty to protect them from domestic terrorism and extremism. However, the Attorney General has had a conflict of interest due to the fact that the perpetrators are from the same political party and the tactics are those routinely employed by this particular political party.

9.    Due to the failure to protect and breach of fiduciary duty by the AG, the appellate courts, and all state agencies, BARNES has been illegally and unconstitutionally deprived of her right to earn a livelihood, practice law, support her children, or earn a decent income ever since February 28, 2011 and this was accomplished by force, threat, coercion, deceit, deception, fraud, abduction, domestic terrorism, and an abuse of power. BARNES has been exploited and forced to work in and under oppressive, unfair, and exploitative conditions and forced to endure violent, abusive, unsafe, unhealthy, and filthy environments. BARNES has also been exploited by having her children placed in economic hardship, under economic duress, and with economic deprivations, and has been subjected to oppressive taxation on property, which increased the maximum amount allowed by law during each year of her captivity when it was vandalized and when she was unable to protest, and by being billed for her forced captivity and subjected to a cloud on title and illegal lien on her real property in an amount in excess of $100,000.00.

10.    The influence of politics, obstruction of justice, deprivation of access to the courts and right to redress of grievances, fraud on the court, and a lack of accountability has fostered an anything-goes mentality within law enforcement ranks, within the

prosecutors' offices and the judicial officers who aid, abet, assist, protect, promote, and perpetuate them. No elected official speaks out against the rampant abuses in "law enforcement" or the "criminal justice system" for fear of being perceived as "soft" on crime or as a "liberal" in an ultra-conservative county. The elected officials take no action to rectify these abuses, and, in fact, advocate, encourage, and reward such abuses. This political posturing enables and encourages employees, law enforcement personnel, and prosecutors to operate with little scrutiny or accountability for the innocent lives they routinely destroy. Law enforcement personnel and prosecutors are sworn to uphold the law, not break it. Honesty and integrity are indispensable tools in the criminal justice system, especially in the investigation and prosecution of cases. Thus, it is up to the judiciary to ensure that justice is done; however, the judges are former prosecutors (*i.e.,* ANDERSON hired and trained BRADLEY and was instrumental in instituting these practices when he was the District Attorney), and are under the same political pressures and personal rewards.[14] In cases of this nature, where the retaliation and lack of sufficient probable cause is present, the local judges bow out and bring in hand-picked "visiting" judges, *i.e.* SHAVER, to do the dirty work for pay—hired and paid mercenary assassins. With the well-known short-comings of the court-appointed lawyer system, the accused is often left with no representation at all. Who then must address systemic local corruption in the criminal justice system—certainly, the Texas Court of Criminal Appeals is not going to address it, again, due to the politics involved and the inherent hate towards anyone labeled a "criminal" in Texas.[15] The duty must fall upon the citizens themselves

---

[14] Albert Einstein once said "The world is a dangerous place, not because of those who do evil, but because of those who look on and do nothing."

[15] Find out just what the people will submit to and you have found out the exact amount of injustice and wrong which will be imposed upon them; and these will continue until they are resisted with either words

in a republican form of government and that is the intent of this lawsuit. Currently, just the mere accusation against a citizen, coupled with the media and Internet coverage inflamed by press-release-probable-cause-affidavits and fanned by sensational and exaggerated "news reporting," completely deprives the citizen of any presumption of innocence or protection from the Grand Jury process or examining trial that was intended to protect innocent citizens from malicious prosecutions for improper purposes. The citizen is deprived of the right to a fair and speedy trial before an impartial jury right from the inception of the accusation.

11.     While acting in their individual capacity and engaging in the activity set forth herein, it was the defendants' ability to benefit and profit from the use of governmental position and power that provided the means and mechanism to retaliate against BARNES and obstruct justice and commit fraud on the court; however, this was not a use of official power authorized by the citizens in establishing the public trust. These governmental agents, employees, representatives, attorneys and law enforcement personnel willfully and maliciously used unlawful means or abused lawful process to violate BARNES' equal rights, equal protection, due process, and due course of law rights; and to deprive her of any legal recourse through intimidation, lack of fairness and impartiality, bullying, retaliation, obstruction, destruction of evidence, and denial of other valuable constitutional rights such as appeal, mandamus, and *habeas corpus.*

12.     These predatory prosecutors, judges, and "psychs on retainer" routinely and habitually abuse C.C.P. art. 46B and blatantly violate the Texas Health and Safety Code, Title 7, Subtitle C, and Texas Constitution, Art. I, § 15-a, in cases where the county or

---

or blows, or with both. The limits of tyrants are prescribed by the endurance of those whom they oppress.
— Frederick Douglass, civil rights activist, Aug. 4, 1857

108

municipality have civil liability exposure due to use of excessive force or other constitutional rights violations, and are used to force arrestees into plea bargaining to gain their freedom from pretrial captivity under harsh and oppressive conditions. A court appointed "psychologist on retainer" for the County, a court appointed attorney, and an elected politician is all that is necessary to abuse the process under C.C.P. art. 46B[16] and thereby incarcerate an accused indefinitely pretrial without any semblance of due process until he is ready to plead guilty to gain his freedom. A guilty plea prevents the civil suit and covers the continuous constitutional violations. These coerced plea bargains are unconstitutional and the system designed to coerce them through a legal artifice to make it appear legitimate is unconstitutional. Elected officials, court officials, and officers of the court are not free to make a mockery of the citizens and abuse them in this fashion because one simply cannot design a fraudulent system like the court-appointed attorney, court-appointed psychiatrist/psychologist, and visiting judge systems in order to systematically deprive the citizens of their freedom, civil liberties, and constitutional "forever inviolate" rights. Star Chambers are unconstitutional and any system designed to form a Star Chamber is itself unconstitutional. If the *defacto* effect of a system is the formation of a Star Chamber and coerced pleas, then it is *per se* unconstitutional. The willful abuse of such a system is prosecutorial misconduct *per se* and a violation of the judicial code of conduct and breach of public trust *per se*.

---

[16] The play book goes like this: the court-appointed lawyer waives all of the accused's rights, the "forensic expert" is paid $2,500.00 to go into jail, talk to the accused, and write a report that he is "incompetent to stand trial" and based on that report alone, the accused is shipped off to a "mental hospital" and drugged and programmed to plea bargain and follow the advice of the court-appointed lawyer, which is always to plea bargain because the lawyer's breach of ethics is the reason the accused is incarcerated and drugged in the first place. The accused is literally held in indefinite captivity until he agrees to forfeit his rights, plea bargain, and forego his remedies for the false arrest or other civil right's violations.

109

13.    Plaintiffs will prove that these malicious prosecutors pursued the charges pursuant to a criminal conspiracy to harm, injure, and damage Plaintiffs for political, retaliatory, and personal animosity reasons.    Plaintiffs will prove that Defendants misused and abused their law enforcement authority and the judicial process to pursue a series of maliciously motivated investigations and prosecutions without probable cause in an effort to discredit, demean, and dehumanize BARNES and cause irreparable harm to her family, business, reputation, practice, and property.    Plaintiffs will prove that these malicious prosecutors never had probable cause to vindictively pursue BARNES or to support the charges they intentionally reported to the media or the counts charged, and that, throughout the investigation of the cases, they were aware that inculpatory evidence was suborned, manufactured, manipulated, or contrived, and at the same time that they were disregarding, failing to preserve, destroying, and/or suppressing exculpatory evidence.  Defendants never had any evidence to support any of these charges, and their sole purpose was to secure a career-ending, embarrassing indictment and media frenzy to permanently mar BARNES' reputation due to the Internet.  Plaintiffs will prove that Defendants acted outside the scope of their official duties in conducting a maliciously motivated "witch hunt" that was gender-based and motivated by political and retaliatory animus, and in initiating and continuing to prosecute in the absence of probable cause as an artifice to continue to harm, injure, damage, embarrass, humiliate, demean, dehumanize, and defame BARNES personally and professionally.  Defendants repeatedly misused and abused their authority and the judicial process to advance their own malicious, political agenda with extreme hatred and prejudice towards a female competitor who opposed their corrupt practices and routine abuses based on prejudices

based on race, gender, or socio-economic status prejudice. The Defendants' conduct falls outside the scope of their official duties.

14.    BARNES had a right not to be deprived of liberty or property as a result of any prosecutorial or judicial misconduct by court officials and officers of the court designed to obstruct justice and perpetrate a fraud on the court. BARNES had a right not to be deprived of liberty or property as a result of  law enforcement or prosecutorial misconduct occurring in the investigative phase of a criminal matter. The prosecutors conspired throughout the pre-indictment phases of these multiple arrests and prosecutions to cause a sequence of events that would result in the injury, damages, and losses ultimately sustained by BARNES, her children, and her clients; and these injuries, damages, and losses were not only reasonably foreseeable consequences of the vindictive and malicious actions, but were the intended result and object of the conspiracy.

15.    Defendants conspired against BARNES for the purpose of impeding, hindering, obstructing, or defeating the due course of justice with the intent to deny to BARNES the equal protection of the laws and her equal rights under the law, and to injure her, her property, her practice of law, her reputation, and her familial relations simply because she lawfully enforced, or attempted to enforce, the right of clients and a distinct class of persons, to the equal protection of the laws. BARNES' clients were minorities, innocent citizens who were being vindictively or selectively prosecuted, or citizens who were discriminated against or targeted and prosecuted for political, social, or economic reasons. BARNES did not plea bargain because her clients were not guilty as charged or were being denied equal protection or due process under the law. BARNES did not comply, cower or kowtow to the coercion, bullying and attempts to intimidate, and was,

therefore repeatedly and habitually subjected to retaliatory harassment, defamation *per se*, false arrests, and annoying attitudes from certain politically-oriented people and the employees subject to their control and influence.

16.    The aim of the conspiracy was to inflict serious injury, damage, and harm; and then to create an impenetrable circle of impunity, with everyone culpable but no one accountable.  Each defendant pointing to the other as a superseding intervening cause, when in reality, they were all involved in the conspiracy, and, therefore should be jointly and severally accountable for all of the reasonably foreseeable consequences of their concerted actions.  First, they jumped at any chance to charge BARNES with a crime, then over-charged it to make it a first degree felony, sensationalized it in the media with false PC affidavits so that BARNES is deprived of the presumption of innocence, tried in the media, and denied a fair trial before a fair and impartial jury.  Then, after inflicting the maximum harm, they engaged in obstruction of justice and committed repeated frauds on the court to delay the case , deny BARNES' rights to clear her name and secure her freedom, to subvert justice, and obtain a wrongful conviction and summary disbarment through the willful use of a Star Chamber and tampering with the evidence and governmental records and destruction of all the exculpatory evidence, which allowed the successful suborning of perjury.

17.    It took the combined action of all the defendants, aided and assisted by the mass media sensationalism and defamation *per se*, to create the result of such an extended indefinite pretrial deprivation of liberty and imposition of such a cruel and unusual punishment in lieu of BARNES' constitutional right to a speedy trial before a fair and impartial jury.  There was never an independent, detached, and neutral intervening

112

decision-maker to break the causal chain because the co-conspirators deliberately avoided any independent judgment or outside, objective, over-sight; and the appellate courts blocked BARNES' efforts in this regard and the AG and SBOT-OCDC ignored BARNES complaints and requests for intervention—in fact, the SBOT-OCDC was actively participating in and protecting the conspiracy of bar members, officers of the court, and court officials in their criminal activity.

XI.

**MALICIOUS PROSECUTION**
**CONSPIRACY TO MALICIOUSLY PROSECUTE**
**AIDING AND ABETTING MALICIOUS PROSECUTION**
**MALICIOUS ABUSE OF PROCESS**
**CONSPIRACY TO MALICIOUSLY ABUSE PROCESS**
**AIDING AND ABETTING THE MALICIOUS ABUSE OF PROCESS**
**FRAUD**
**CONSPIRACY TO DEFRAUD**
**AIDING AND ABETTING FRAUD**
**FRAUD ON THE COURT**
**CONSPIRACY TO COMMIT FRAUD ON THE COURT**
**AIDING AND ABETTING FRAUD ON THE COURT**
**DEPRIVATION OF LIBERTY**
**CONSPIRACY TO DEPRIVE OF LIBERTY INTERESTS**
**AIDING AND ABETTING DEPRIVATION OF LIBERTY**
**DEPRIVATION OF TEXAS CONSTITUTIONAL RIGHTS**
**CONSPIRACY TO DEPRIVE OF TEXAS CONSTITUTIONAL RIGHTS**
**AIDING AND ABETTING DEPRIVATION OF TEXAS CONSTITUTIONAL RIGHTS**
**BREACH OF FIDUCIARY DUTY**
**CONSPIRACY TO BREACH FIDUCIARY DUTY**
**AIDING AND ABETTING BREACH OF FIDUCIARY DUTY**
**BREACH OF TRUST**
**CONSPIRACY TO BREACH TRUST**
**AIDING AND ABETTING BREACH OF TRUST**
**INTENTIONAL INFLICTION OF EMOTIONAL DISTRESS AND MENTAL ANGUISH**
**CONSPIRACY TO INFLICT EMOTIONAL DISTRESS AND MENTAL ANGUISH**
**AIDING AND ABETTING THE INFLICTION OF EMOTIONAL DISTRESS AND MENTAL ANGUISH**
**PERMANENT AND CONTINUING DEFAMATION**
**CONSPIRACY TO DEFAME**

113

AIDING AND ABETTING DEFAMATION
TORTIOUS INTERFERENCE WITH FIDUCIARY RELATIONSHIPS
CONSPIRACY TO TORTIOUSLY INTERFERE WITH FIDUCIARY
RELATIONSHIPS
AIDING AND ABETTING THE TORTIOUS INTERFERENCE WITH
FIDUCIARY RELATIONSHIPS
INTERFERENCE WITH FAMILIAL RELATIONS
CONSPIRACY TO TORTIOUSLY INTERFERE WITH FAMILIAL RELATIONS
AIDING AND ABETTING TORTIOUS INTERFERENCE WITH FAMILIAL
RELATIONS
BREACH OF SURETY BAIL BOND CONTRACT
CONSPIRACY TO BREACH SURETY BAIL BOND CONTRACT
AIDING AND ABETTING BREACH OF SURETY BAIL BOND CONTRACT
AGGRAVATED KIDNAPPING
CONSPIRACY TO ENGAGE IN AGGRAVATED KIDNAPPING
AIDING AND ABETTING AGGRAVATED KIDNAPPING
AGGRAVATED PERJURY
CONSPIRACY TO COMMIT AGGRAVATED PERJURY
AIDING AND ABETTING AGGRAVATED PERJURY
FRAMING A CITIZEN OF TEXAS
CONSPIRACY TO FRAME A CITIZEN OF TEXAS
AIDING AND ABETTING THE FRAMING OF A CITIZEN OF TEXAS
FAILURE TO PRESERVE AND DESTRUCTION OF EXCULPATORY
EVIDENCE TO DEPRIVE CITIZEN OF ACCESS TO EXCULPATORY
EVIDENCE, TRUTH, AND JUSTICE
CONSPIRACY TO DEPRIVE A CITIZEN OF EXCULPATORY EVIDENCE
AIDING AND ABETTING DEPRIVATION OF EXCULPATORY EVIDENCE
INVASION OF PRIVACY
CONSPIRACY TO INVADE PRIVACY
AIDING AND ABETTING THE INVASION OF PRIVACY
COMMISSION OF CRIMES OF VIOLENCE
CONSPIRACY TO COMMIT CRIMES OF VIOLENCE
AIDING AND ABETTING CRIMES OF VIOLENCE
COMMISSION OF HEINOUS HATE CRIMES
CONSPIRACY TO COMMIT HEINOUS HATE CRIMES
AIDING AND ABETTING MISOGYNOUS HATE CRIMES
DEPRIVATION OF DUE COURSE OF LAW
CONSPIRACY TO DEPRIVE OF DUE COURSE OF LAW
AIDING AND ABETTING THE DEPRIVATION OF DUE COURSE OF LAW
DEPRIVATION OF EQUAL RIGHTS
CONSPIRACY TO DEPRIVE OF EQUAL RIGHTS
AIDING AND ABETTING DEPRIVATION OF EQUAL RIGHTS
SUSPENSION OF HABEAS CORPUS
CONSPIRACY TO SUSPEND HABEAS CORPUS
AIDING AND ABETTING THE SUSPENSION OF HABEAS CORPUS
TRANSGRESSIONS OF THE HIGH POWERS

CONPIRACY TO COMMIT TRANSGRESSIONS OF THE HIGH POWERS
AIDING AND ABETTING THE TRANSGRESSION OF THE HIGH POWERS
SUSPENSION OF THE OPERATION OF LAW
CONSPIRACY TO SUSPEND THE OPERATION OF LAW
AIDING AND ABETTING THE SUSPENSION OF LAW
OBSTRUCTION OF REDRESS OF GRIEVANCES AND ACCESS TO THE
COURTS
CONSPIRACY TO OBSTRUCT REDRESS OF GRIEVANCES
AIDING AND ABETTING THE OBSTRUCTION OF REDRESS OF
GRIEVANCES
OBSTRUCTION OF JUSTICE
CONSPIRACY TO OBSTRUCT JUSTICE
AIDING AND ABETTING THE OBSTRUCTION OF JUSTICE
DENIAL OF RIGHT TO KEEP AND BEAR ARMS
CONSPIRACY TO DENY RIGHT TO KEEP AND BEAR ARMS
AIDING AND ABETTING THE DENIAL OF RIGHT TO KEEP AND BEAR
ARMS
OUTLAWING A CITIZEN OF TEXAS
CONSPIRACY TO OUTLAW A CITIZEN OF TEXAS
AIDING AND ABETTING THE OUTLAW OF A CITIZEN OF TEXAS
THEFT AND BURGLARY
CONSPIRACY TO COMMIT THEFT AND BURGLARY
AIDING AND ABETTING THEFT AND BURGLARY
DEPRIVATION OF LIFE, LIBERTY, PROPERTY, AND PRIVILEGES
CONSPIRACY TO DEPRIVE OF LIFE, LIBERTY, PROPERTY, AND
PRIVILEGES
AIDING AND ABETTING THE DEPRIVATION OF LIFE, LIBERTY,
PROPERTY, AND PRIVILEGES
DISFRANCHISEMENT OF A CITZEN OF TEXAS
CONSPIRACY TO DISFRANCHISE A CITIZEN OF TEXAS
AIDING AND ABETTING THE DISFRANCHISEMENT OF A CITIZEN OF
TEXAS
BREACH OF PUBLIC TRUST
CONSPIRACY TO DEPRIVE INTENDED BENEFICIARY OF TRUST
AIDING AND ABETTING THE BREACH OF PULIC TRUST AND
DEPRIVATION OF RIGHTS TO THE INTENDED BENEFICIARY OF TRUST
DEPRIVATION OF DUE COURSE OF LAW OF THE LAND
CONSPIRACY TO DEPRIVE OF DUE COURSE OF LAW OF THE LAND
AIDING AND ABETTING THE DEPRIVATION OF DUE COURSE OF LAW
IMPOSITION OF BILL OF ATTAINDER, EX POST FACTO LAW, OR
RETROACTIVE LAW
CONSPIRACY TO IMPOSE A BILL OF ATTAINDER, EX POST FACTO LAW,
OR RETROACTIVE LAW
AIDING AND ABETTING THE IMPOSE A BILL OF ATTAINDER, EX POST
FACTO LAW, OR RETROACTIVE LAW
IMPAIRMENT OF THE OBLIGATION OF CONTRACTS

115

CONSPIRACY TO IMPAIR OBLIGATION OF CONTRACTS
AIDING AND ABETTING THE IMPAIRMENT OF OBLIGATION OF
CONTRACTS
DEPRIVATION OF JURY TRIAL IN COMMITMENT
CONSPIRACY TO DEPRIVE OF JURY TRIAL IN COMMITMENT
AIDING AND ABETTING THE DEPRIVATION OF A JURY TRIAL IN
COMMITMENT
DEPRIVATION OF NOTICE, HEARING, AND DUE COURSE OF LAW IN
COMMITMENT
CONSPIRACY TO DEPRIVE OF NOTICE, HEARING, AND DUE COURSE OF
LAW IN COMMITMENT
AIDING AND ABETTING DEPRIVATION OF NOTICE, HEARING, AND DUE
COURSE OF LAW IN COMMITMENT
EXCESSIVE BAIL REQUIRED, EXCESSIVE FEES IMPOSED, AND CRUEL
AND UNUSUAL PUNISHMENT INFLICTED
CONSPIRACY TO REQUIRE EXCESSIVE BAIL, IMPOSE EXCESSIVE FINES
AND INFLICT CRUEL AND UNUSUAL PUNISHMENT
AIDING AND ABETTING THE REQUIREMENT OF EXCESSIVE BAIL,
IMPOSITION OF EXCESSIVE FINES AND INFLICTION OF CRUEL AND
UNUSUAL PUNISHMENT
CLOSURE OF THE COURTS AND DENIAL OF REMEDY BY DUE COURSE
OF LAW FOR WRONGS DONE TO A CITIZEN OF TEXAS
CONSPIRACY TO CLOSE THE COURTS AND DENY REMEDY BY DUE
COURSE OF LAW FOR WRONGS DONE TO A CITIZEN OF TEXAS
AIDING AND ABETTING THE CLOSING OF THE COURTS AND DENIAL OF
REMEDY BY DUE COUSE OF LAW FOR WRONGS DONE TO A CITIZEN OF
TEXAS
SUSPENSION OF HABEAS CORPUS
CONSPIRACY TO SUSPEND HABEAS CORPUS
AIDING AND ABETTING THE SUSPENSION OF HABEAS CORPUS
PREVENTION AND OBSTRUCTION OF ACCESS TO REASONABLE BAIL
CONSPIRACY TO PREVENT OR OBSTRUCT ACCESS TO REASONABLE
BAIL
AIDING AND ABETTING THE OBSTRUCTION OF ACCESS TO
REASONABLE BAIL
OBSTRUCTION OF ACCESS TO A SPEEDY TRIAL AND FAIR JURY TRIAL
CONSPIRACY TO OBSTRUCT ACCESS TO A SPEEDY AND FAIR JURY
TRIAL
AIDING AND ABETTING THE OBSTRUCTION OF ACCESS TO A SPEEDY
AND FAIR JURY TRIAL
DEPRIVATION OF RIGHT TO BE HEARD BY HIMSELF, COUNSEL, OR
BOTH
CONSPIRACY TO DEPRIVE OF RIGHT TO BE HEARD BY HIMSELF,
COUNSEL, OR BOTH
AIDING AND ABETTING THE DEPRIVATION OF RIGHT TO BE HEARD BY
HIMSELF, COUNSEL, OR BOTH

116

DEPRIVATION OF RIGHT TO CONFRONT WITNESS AGAINST AND TO
CALL WITNESSES IN FAVOR
CONSPIRACY TO DEPRIVE OF RIGHT TO CONFRONT WITNESS AGAINST
AND TO CALL WITNESSES IN FAVOR
AIDING AND ABETTING THE DEPRIVATION OF RIGHT TO CONFRONT
WITNESS AGAINST AND TO CALL WITNESSES IN FAVOR
OBSTRUCTION OF RIGHT TO PUT ON OWN DEFENSE
CONSPIRACY TO OBSTRUCT RIGHT TO PUT ON OWN DEFENSE
AIDING AND ABETTING OBSTRUCTION OF RIGHT TO PUT ON OWN
DEFENSE
DEPRIVATION OF FAIR GRAND JURY PROCESS
CONSPIRACY TO DEPRIVE OF FAIR GRAND JURY PROCESS
AIDING AND ABETTING OBSTRUCTION OF GRAND JURY PROCESS
DEPRIVATION OF FAIR JURY
CONSPIRACY TO DEPRIVE OF FAIR JURY
AIDING AND ABETTING DEPRIVATION OF FAIR JURY
DEPRIVATION OF NEUTRAL AND DETACHED MAGISTRATE
CONSPIRACY TO DEPRIVE OF NEUTRAL AND DETACHED MAGISTRATE
AIDING AND ABETTING THE DEPRIVATION OF NEUTRAL AND
DETACHED MAGISTRATE
DEPRIVATION OF FAIR AND IMPARTIAL TRIBUNAL
CONSPIRACY TO DEPRIVE OF A FAIR AND IMPARTIAL TRIBUNAL
AIDING AND ABETTING THE DEPRIVATION OF A FAIR AND IMPARTIAL
TRIBUNAL
DEPRIVATION OF FAIR AND COMPETENT INVESTIGATION
CONSPIRACY TO DEPRIVE OF A FAIR AND COMPETENT INVESTIGATION
AIDING AND ABETTING THE DEPRIVATION OF A FAIR AND COMPETENT
INVESTIGATION
DEPRIVATION OF COMPETENT AND EFFECTIVE LEGAL
REPRESENTATION
CONSPIRACY TO DEPRIVE OF COMPETENT AND EFFECTIVE LEGAL
REPRESENTATION
AIDING AND ABETTING THE DEPRIVATION OF COMPETENT AND
EFFECTIVE LEGAL REPRESENTATION
CONSTRUCTION OF STAR CHAMBER
CONSPIRACY TO SET UP A STAR CHAMBER
AIDING AND ABETTING THE ERECTION OF A STAR CHAMBER
UNREASONABLE SEARCH AND SEIZURE
CONSPIRACY TO SUBJECT A CITIZEN OF TEXAS TO AN UNREASONABLE
SEARCH AND SEIZURE
AIDING AND ABETTING THE UNREASONABLE SEARCH AND SEIZURE
DOUBLE JEOPARDY VIOLATIONS
CONSPIRACY TO VIOLATE DOUBLE JEOPARDY PROTECTIONS
AIDING AND ABETTING VIOLATION OF DOUBLE JEOPARDY
PROTECTIONS

117

SUPPRESSION OF FREE SPEECH AND ASSOCIATION AND PUNISHMENT OF SPEECH ONLY CONDUCT
CONSPIRACY TO SUPPRESS FREE SPEECH AND ASSOCIATION AND TO PUNISH SPEECH ONLY CONDUCT
AIDING AND ABETTING THE SUPPRESSION OF FREE SPEECH AND ASSOCIATION AND PUNISHMENT OF SPEECH ONLY CONDUCT
OPPRESSION INTENDED TO ALTER DICTATES OF CONSCIENCE
CONSPIRACY TO OPPRESS TO ALTER DICTATES OF CONSCIENCE
AIDING AND ABETTING THE OPPRESSION TO ALTER DICTATES OF CONSCIENCE
USURPATION OF POLITICAL POWER INHERENT IN THE PEOPLE
CONSPIRACY TO USURP POLITICAL POWER INHERENT IN THE PEOPLE
AIDING AND ABETTING THE USURPATION OF POLITICAL POWER
ABRIDGMENT OF GENERAL, GREAT AND ESSENTIAL PRINCIPLES OF LIBERTY
CONSPIRACY TO ABRIDGE GENERAL, GREAT AND ESSENTIAL PRINCIPLES OF LIBERTY
AIDING AND ABETTING THE ABRIDGEMENT OF GENERAL, GREAT AND ESSENTIAL PRINSIPLES OF LIBERTY
WILLFUL OBSTRUCTION OF JUSTICE AND COMMISSION OF ULTRA VIRES ACTS OUTSIDE THE BOUNDS OF DECENCY AND THE LAW
CONSPIRACY TO WILLFULLY OBSTRUCT JUSTICE AND COMMIT ULTRA VIRES ACTS OUTSIDE THE BOUNDS OF DECENCY AND THE LAW
AIDING AND ABETTING THE WILLFUL OBSTRUCTION OF JUSTICE AND COMMITMENT OF ULTRA VIRES ACTS OUTSIDE THE BOUNDS OF DECENCY AND THE LAW
LEGAL MALPRACTICE
CONSPIRACY TO COMMIT LEGAL MALPRACTICE
AIDING AND ABETTING LEGAL MALPRACTICE
WRONGFUL DISBARMENT
CONSPIRACY TO DISBAR
AIDING AND ABETTING WRONGFUL DISBARMENT
TORTIOUS INTERFERENCE WITH BUSINESS RELATIONS
CONSPIRACY TO TORTIOUSLY INTERFERE WITH BUSINESS RELATIONS
AIDING AND ABETTING TORTIOUS INTERFERENCE WITH BUSINESS RELATIONS
AGGRAVATED KIDNAPPING
CONSPIRACY TO COMMIT AGGRAVATED KIDNAPPING
AIDING AND ABETTING AGGRAVATED KIDNAPPING
FALSE ARREST
CONSPIRACY TO COMMIT FALSE ARREST
AIDING AND ABETTING FALSE ARREST
UNCONSTITUTIONAL CIVIL COMMITMENT
CONSPIRACY TO UNCONSTITUTIONALLY COMMIT CIVILLY
AIDING AND ABETTING UNCONSTITUTIONAL CIVIL COMMITMENT
EXEMPLARY DAMAGES

118

1.      The allegations contained in the above paragraphs and all the facts and arguments set forth hereinabove are hereby incorporated by reference herein, the same as if fully set forth at length and verbatim for any and all purposes of this pleading.

2.      In further support of her causes of action, BARNES asserts all of the causes of actions set forth in the paragraph heading above and would show that defendants, jointly and severally, acting in concert pursuant to a conspiracy, or aided, abetted, and assisted, engaged in these unconstitutional and unlawful acts, violations, and breaches, with the malicious and vindictive intent to harm, injure, or damage another.

3.      It is inconceivable that a lawyer practicing for so many years, who is arrested on a first degree felony, would not warrant a good faith investigation and review of the case against her to ascertain the weakness and absence of the evidence in the case and lack of probable cause to arrest her. No decent, honest, and reasonable person would have failed to conduct such a good faith investigation prior to ruining the reputation, career, and practice of an officer of the court. These defendants, in both of these counties, exhibited a deliberate indifference and conscious disregard for the constitutional rights of Plaintiffs and persons similarly situated when they failed to cause or conduct a good faith investigation into these false allegations prior to allowing their subordinates and employees to so maliciously defame BARNES in the media and permanently on the Internet. Any decent, honest, and reasonable person would have known that these allegations would ruin BARNES' career, practice, and reputation and that there would be no way to recover from the harm, injury, and damage that was reasonably foreseeable. These Defendants at all times allowed their hate and animosity to override reasonableness, sound judgment, and good sense. BARNES has not been able to obtain

justice, fair treatment, or equality in any court since the inception of this massive media defamation *per se* and attack upon her character began in 2010. This is especially heightened by the fact that BARNES had been the target of retaliation and many false arrests and malicious prosecutions prior to these latest false arrests and malicious prosecutions—this history of bad faith by these same deputies and prosecutors should have heightened the alert and concern. However, the prior abuses, retaliation, and bad acts of these defendants were also turned around and used against BARNES by the media. The fact that these defendants in both counties completely failed and refused to provide BARNES with discovery and a timely resolution and speedy jury trial is further evidence that these defendants were acting in concert, aiding and abetting each other, and knew that the arrests were wrongful and the prosecutions were malicious; otherwise, they would not hide the evidence, stall the case, resist discovery, and continue to obstruct justice. Both of the accusers were employed in governmental positions, both were liars, and both protected, coached, and rewarded for their aggravated perjury. Further, no decent, honest, and reasonable person would have devised the malicious scheme to abuse process under C.C.P. art. 46B and Texas Health and Safety Code, Title 7, Subtitle C to permanently banish BARNES to a state facility for the criminally insane when BARNES has not ever hit, punched, poked, shoved, scratched, bruised, or hurt anyone. BARNES was warehoused in the only psychiatric hospital for the manifestly dangerous and criminally insane persons for the entire state of Texas where she was repeatedly assaulted, restrained, secluded, isolated, drugged, hit, poked, shoved, scratched, bruised, and injured by the state employees and law enforcement personnel as well as the criminally insane—both male and female due to BARNES being forced into housing with

the men who were manifestly dangerous sex offenders and murderers as a direct and proximate result of the instructions from the defendants. BARNES was deprived of both her right to appeal this horrendous act of violence and of her right to seek *habeas corpus*. It is simply ludicrous to state that BARNES is not able to file an application for writ of *habeas corpus* when, indeed, anyone can; and just sticking a person who holds a license to practice law in Texas on a case does not nullify and eradicate the Texas Bill of Rights. These rights are "forever inviolate" and no men or set of men can circumvent, repeal, or ignore these individual, God-given, organic, inherent, and inalienable rights. In our republican form of government, BARNES had rights equal to these white men under the due course of law. It is inconceivable that any decent, honest, and reasonable person would believe in good faith that a trial lawyer who has been practicing almost 30 years would be "incompetent to stand trial" and if they did really believe that in good faith, then they would have had no problem allowing BARNES her constitutional and statutory right to a jury trial, to confront the evidence and cross examine the witnesses, and to call experts and fact witnesses in her own defense. The fact that they deliberately, intentionally, and willfully deprived BARNES of these valuable constitutional and statutory rights is *per se* unconstitutional and criminal. These Defendants failed and refused to even provide BARNES with a copy of any pleadings or orders and failed and refused to give her any notice of the "hearings." BARNES was not even allowed to attend the "hearing" resulting in the oppressive and unconstitutional *per se* civil commitment without any semblance of due process. It was a clear violation of the Texas Constitution for the THIRD COURT and SUPREME COURT to block BARNES' access to any remedial remedy, right of redress, or relief on appeal and obstruct her right to the

record and suspend *habeas corpus*, as these acts violated her equal rights, equal treatment under the law, due process, due course of law, and open court's rights set forth in the Texas Bill of Rights—and "these rights shall remain forever inviolate." No decent, honest, and reasonable person would have believed in good faith that those "hearings" comported with equal rights, due process, equal protection, or due course of law; and the refusal to review the facts by the appellate courts did not legitimize an illegal and unconstitutional act. A complete dereliction of duty does not transform illegal and unconstitutional actions into legal and constitutional conduct. These acts are continuing acts of fraud on the court and obstruction of justice by those entrusted with the fair and impartial administration of justice upon which all civil liberties and a civilized and decent society depend.

XII.

## DAMAGES

1.      As a result of the foregoing unlawful and wrongful acts of Defendants, jointly and severally, Plaintiffs have suffered general damages which include but are not limited to the following: both physical and emotional injury, including but not limited to financial losses, real property losses, personal property losses, and other losses to BARNES and Plaintiffs in excess of $700,000.00, incurrence of medical bills in excess of $250,000.00, liquidated damages in excess of $1,000,000.00, loss of family relations, (BARNES was not even allowed any physical contact with her children, one a minor, for over a year, and denied any contact whatsoever for months at a time); loss of personal property, assets, and income in excess of $500,000.00; loss accounts receivables in excess of $150,000.00; loss of her real lawyers and retained expert witnesses; loss of her law practice, with long-

122

established phone numbers, websites, domain names, and bank accounts; and loss of her reputation, loss of business relations and contracts, loss of business assets and goodwill, loss of cell phone, loss of diamond bracelet, excessive bond payments in excess of $12,000.00, pain and suffering, emotional and mental anguish, and personal humiliation, shock and outrage, along with severe emotional distress, both in the past and in the future, and loss of income and earning potential in the past and in the future. BARNES seeks damages in the amount of $7,000,000.00 from the Defendants, jointly and severally, and each of the Plaintiff children seeks damages in the amount of $1,000,000.00 each from the Defendants, jointly and severally. Plaintiffs seek exemplary, punitive, or treble damages, reasonable and necessary legal fees, and all costs of court to be assessed against Defendants, jointly and severally.

2.    Said injuries have caused Plaintiffs to incur special damages which include but are not limited to: lost income, defamation injury, damages to practice, lost business opportunities, investment income, and personal property rights, both tangible and intangible, and the incurrence of past medical bills, probable future medical bills, incurrence of expert fees, attorneys' fees, costs, and expenses associated with criminal charges and resulting pretrial captivity, as well as this action caused by the excessive pretrial punishment and denial of fundamental structural rights.

3.    Plaintiff further prays for all costs and attorney fees associated with bringing the present case to trial. Further, with respect to the violations of the RICO statute, BARNES is entitled to recover attorney's fees and costs of court, for which Plaintiffs pray. Additionally, with respect to the declaratory judgment relief sought and other causes of action and claims, the Defendants' conduct as described herein and the

resulting harm, damage and loss to BARNES has necessitated the retention of an attorney. BARNES is, therefore, entitled to recover from these Defendants, jointly and severally, an additional sum to compensate BARNES for a reasonable fee for such attorney's necessary services in the preparation and prosecution of this action, as well as a reasonable fee for any and all appeals to other courts.

4.      In addition, Plaintiff prays for exemplary and punitive damages against all individual Defendants, jointly and severally, as determined by the jury. Defendants knew that their conduct was unconstitutional, and/or were callously indifferent to its legality, and knew their conduct violated international law on human rights. The Defendants, acting in concert, exhibited extreme hatred towards BARNES as evidence by the conscious disregard and deliberate indifference to her rights, safety, and welfare, as well as the rights, safety, and welfare of her children and clients.

5.      Further, Plaintiffs request that this Court issue a declaratory judgment as more particularly set forth hereinabove and that Defendants unlawfully deprived BARNES of her right to free speech, freedom of association, to privacy and to be left alone, to be free of pretrial punishment and captivity, to a speedy trial, to a fair jury, to represent herself, to be heard, to one bail without unilateral modifications or breaches, to exculpatory evidence, to due process, to equal protection under the law, to be free from unreasonable searches and seizures, and right to redress of grievances without retaliation and malicious, vindictive prosecutions.

6.      Further, Plaintiffs request that this Court permanently enjoin Defendants, and their agents and those acting in concert with them, as more fully set forth hereinabove, and from maintaining an unconstitutional political patronage system or retaliatory scam

whereby freedoms of political beliefs, speech, assembly, association, affiliation, and other valuable rights are infringed upon; and requiring Defendants to adopt and implement written and enforceable policies and procedures, along with a written policy and procedure to enforce, discipline, and timely rectify any breach in these written policies and procedures to prevent these retaliatory, malicious, and vindictive actions in the future.

7.      Additionally, Plaintiffs request that this Court permanently enjoin Defendants as more fully requested hereinabove and from further engagement in these malicious, vindictive, and groundless prosecutions against the citizens of this state.

8.      Further, Plaintiffs request that this Court enter a monetary judgment for all actual and consequential damages, both economic and non-economic, and both past and future, up to the fullest extent allowed under the law, taking into consideration any applicable statutory protective caps on recovery in suits of this nature; and enter a monetary judgment in an amount sufficient to punish any defendant whom the jury determines participated in intentional, knowing, deliberate, malicious, vindictive, or retaliatory actions against Plaintiffs, and sufficient in amount to deter them from engaging in such constitutional infringements and unlawful conduct in the future.

9.      Pursuant to Section 37.009 of the Texas Civil Practice and Remedies Code, request is made for all costs and reasonable and necessary attorney's fees incurred by Plaintiff herein, including all fees necessary in the event of an appeal of this cause to the Court of Appeals and the Supreme Court of Texas , as the Court deems equitable and just.

XIII.

suffering in the past and future, mental anguish and emotional distress in the past and in the future, reputational damages, loss of companionship, care, comfort, and solace, or other such damages incurred or suffered as a direct, proximate, and foreseeable result of consequence of the unlawful or unconstitutional conduct of said Defendants;

5.    an order directing all defendants to turn over and destroy any and all derogatory and defamatory *per se* records, documents, or other material generated by or resulting from the illegal, unlawful, or unconstitutional actions of said Defendants, that would not exist but for the wrong-doing of Defendants, expunging all criminal records, and restoring BARNES to her pre-constitutional violations status, including the erasure and striking of stigmata, flags, and labeling associated with mental commitments;

6.    an order directing the removal of all records, documentation, and negative stigma that would damage, injure, or harm BARNES in the future with respect to the psychiatric diagnosis and abuses suffered by BARNES or imposed on BARNES;

7.    an order directing the removal of all Internet postings that are defamatory per se, deceptive, misleading, or untruthful;

8.    an award of attorney's fees reasonably and necessarily incurred in bringing and prosecuting this action;

9.    an award of all costs of court, expert fees, and court reporter fees for discovery in this cause, against all Defendants, jointly and severally;

10.   an award of enhanced damages (punitive or exemplary damages, or treble damages) as provided by common law or statute, from Defendants, jointly and severally;

11.   an award of pre- and post-judgment interest as recoverable at law; and

12.   such other and further relief, at law or in equity, as the Court deems just and proper.

**WHEREFORE PREMISES CONSIDERED,** Plaintiffs pray that upon trial of the merits, they recover compensatory damages against Defendants, jointly and severally;

127

**PRAYER FOR RELIEF AND**
**DEMAND FOR JUDGMENT**

**WHEREFORE, PREMISES CONSIDERED,** Plaintiff prays that citation and notice

issue as required by law. Plaintiff prays that the Court, after notice and hearing, grant a

permanent injunction enjoining and restraining Defendants, in conformity with the

allegations of this petition, from the acts set forth hereinabove, and Plaintiff prays that

Defendants be cited to appear and answer herein, and that on final trial hereof ,

declaratory judgment be granted as requested herein, and that Plaintiff be awarded costs

and reasonable and necessary attorney's fees , and for such other and further relief that

may be awarded at law or in equity . Further, in light of the foregoing, Plaintiffs

respectfully request the following:

1. a judgment pursuant to the Declaratory Judgment Act as fully
   requested hereinabove and declaring that Defendants, jointly and
   severally violated BARNES constitutional, statutory, contractual,
   and common law rights, and declaring that the actions of
   Defendants violated Texas Constitution, Art. I, §§ 3, 3a, 8, 9, 10,
   11, 11b, 12, 13, 15, 15-a, 16, 19, 23, 27, 28, and 29, and intruded
   on Plaintiffs' privacy, seclusion, and right to be left alone in
   violation of the Constitution, laws, and common laws of this State;

2. an award of damages against the individual Defendants, jointly and
   severally, for violating Plaintiffs' constitutional rights under the
   Texas Constitutions, Texas laws and common laws, as well as the
   lawful contracts as alleged hereinabove;

3. an award of actual and consequential damages against all
   defendants, jointly and severally, for willfully violating the
   Plaintiffs' rights under the Texas Constitution and pursuant to the
   Texas Tort Claims Act, and the spirit of all other laws and for the
   RICO violations;

4. an award of actual and consequential damages against all
   Defendants, jointly and severally, for all monetary damages,
   liquidated damages, medical bills, loss of earning potential, and
   out-of-pocket costs and losses, including all lost wages and
   income, lost property, costs, expenses, bills, invoices, pain and

126

that Plaintiff also recover punitive damages against Defendants in an amount to punish and/or deter and to make an example of those Defendants in order to prevent similar future conduct; and, that Plaintiffs recover against each Defendant all reasonable and necessary attorney's fees, court costs and expenses in regards to the present suit in litigation. Moreover, Plaintiffs pray for all pre-judgment and post judgment interest that can be assessed against the Defendants in the event of recovery; and that Plaintiffs recover against each Defendant any and all other general or specific relief to which she may prove herself justly entitled, whether at law or in equity.

Respectfully submitted,

Carolyn Barnes
419 Indian Trail
Leander, Texas 78641
Barnes.legalguidance@gmail.com
281-467-8681

BY: _____
Carolyn Barnes

## JURY DEMAND

Plaintiffs, CAROLYN BARNES and her children, hereby demand trial by jury of all issues raised in this civil action that are triable of right, or by choice, to a jury.

128